[No. 7210–6–II.   Division Two.   November 13, 1984.]

THOMAS A. BROWN, *as Guardian ad Litem,* ET AL, *Respondents,* v. YAMAHA MOTOR CORP., U.S.A., ET AL, *Appellants.*

*William R. Hickman,* for appellants.

*Paul L. Stritmatter* and *Richard Vroman,* for respondents.

WORSWICK, A.C.J.—Respondents Thomas A. Brown, as guardian ad litem, and Geri F. Peterson, individually, brought this action claiming damages for injuries sustained by Shawn P. Hejna, age 15, while riding a Yamaha motorcycle. Their claim was based on strict liability and, in the alternative, negligence for Yamaha's failure to install a "kill switch" on the machine. A kill switch is a device that permits a rider to shut off the engine without letting go of the handlebars. The jury rejected strict liability but found negligence and rendered a $10 million verdict. It also found contributory negligence of 35 percent.[1] The trial court granted respondents' motion for judgment n.o.v. as to contributory negligence and entered judgment for the full

---

[1]The accident occurred before July 26, 1981, the effective date of RCW 7.72, the product liability act. *See* RCW 4.22.920, and the Code Reviser's note thereto.

amount.

On this appeal, the three corporate appellants, Yamaha Motor Corporation, U.S.A., Yamaha Motor Co., Ltd., and Yamaha International Corporation, make 19 assignments of error which raise 2 substantive and 12 procedural issues. Respondents cross–appeal on an issue relating to post–verdict interest.

As to the substantive issues, appellants contend that the jury's finding of negligence is inconsistent with its rejection of strict liability. They also contend that substantial evidence supported the contributory negligence finding which therefore should not have been disturbed. We reverse the judgment n.o.v. and otherwise affirm.

On January 30, 1980, Shawn went motorcycle riding with a friend in a park frequently used by dirt bike riders. The friend owned the bike. He allowed Shawn to use it to ride up some hillside trails. Shawn was unfamiliar with it and had problems at first. After one run, during which he experimented with the gearshift, he took it down to flat ground at the base of a hill. Then, from about 200 feet from the base of the hill, he started on a trail which ascended the hill to an open, flat area on top. When he was about 50 to 75 feet from the base of the hill, the friend noticed that Shawn was accelerating too fast and began waving his arms and yelling for him to slow down. He did not, but continued to accelerate as he climbed the hill. The machine became airborne at the top. Shawn fell off and sustained injuries which ultimately made him quadriplegic.

The evidence at trial was extensive and voluminous. A multitude of lay and expert witnesses testified. All the evidence revolved, however, around respondents' contention that the throttle had stuck on the run up the hill and that a kill switch would have permitted Shawn to maintain control and avoid the accident.

## STRICT LIABILITY/NEGLIGENCE

It was clear throughout that respondents were pursuing strict liability and negligence as separate, alternative

theories.[2] The instructions were fully adequate to inform the jury of this. In accordance with current practice in these cases, the verdict was in the form of special interrogatories, backed up by suitable instructions, which required the jury to determine first whether liability attached under strict liability and, if not, whether appellants had been negligent. The jury rejected strict liability but found negligence.[3] Appellants now ask us to dismiss the claim outright or to grant a new trial (*see Blue Chelan, Inc. v. Department of Labor & Indus.*, 101 Wn.2d 512, 681 P.2d 233 (1984)), because of the claimed inconsistency. We hold that the jury's findings were not inconsistent.

Appellants' argument presupposes that the "not reasonably safe" (or "unreasonably dangerous") element in a strict liability action is coextensive with negligent design or manufacture. This is contrary to settled Washington law under which a jury can find that a plaintiff did not meet the burden of proving a product "not reasonably safe" under a strict liability theory, and still find that negligence had been proved.

Appellants cite numerous cases from jurisdictions having a different perspective. Washington courts, however, have consistently held that negligence and strict liability are separate, nonexclusive theories equally available to a

---

[2]Respondents' brief here is essentially devoted to a discussion of strict liability based on defective design, although their pleadings are imprecise. Our discussion is premised on a theory of defective design as the basis for the strict liability claim.

[3]The pertinent interrogatories and answers were as follows:
QUESTION No. 1: Did the defendants supply a product which was "not reasonably safe" at the time it left defendant's control?
Answer: No (Yes or no)
(If your answer is "no", go to Question 5.)
. . .
QUESTION No. 5: Was there negligence by the defendants which was a proximate cause of injury or damage to the plaintiff?
Answer: Yes (Yes or no)
(If your answer is "no", do not answer any further questions.)

plaintiff. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 684 P.2d 692 (1984). When our Supreme Court first extended the strict liability concept to defective design cases, it adverted to the difficulty in defining the "defect" in a product where the alleged danger arose from the design. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975). It chose to consider a product necessarily defective if it was unreasonably dangerous because of a deviation from the safety standards contemplated by a reasonable consumer, taking into account the intrinsic nature of the product. *Tabert,* 86 Wn.2d at 154. Thus, in such a case a jury does not evaluate the manufacturer's conduct. It only determines whether the product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 587 P.2d 160, 16 A.L.R.4th 129 (1978). In a strict liability case, the manufacturer's conduct is simply irrelevant. *Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 683 P.2d 1097 (1984).

Conversely, the manufacturer's conduct is the precise focus of the jury's attention in a negligence case, because negligence arises from a failure to use ordinary care. The application of negligence principles to a negligent design case is simply a special application of the general rule that a manufacturer has a duty to refrain from negligent manufacture. *Palmer v. Massey–Ferguson, Inc.,* 3 Wn. App. 508, 476 P.2d 713 (1970). That rule requires a manufacturer to exercise care to eliminate from the product risk which it should recognize as creating an unreasonable likelihood of harm. *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936 (1964).

Any doubt that negligence and strict liability are separate and nonexclusive theories in Washington should have been erased by *Davis v. Globe Mach. Mfg. Co., supra,* in which an injured worker sued under both theories to recover from the manufacturer of a glue spreading machine. The trial court took the negligence claim from the jury but submitted the strict liability claim. Appealing an adverse

verdict, the plaintiff argued in part that the negligence claim should have gone to the jury. The defendant countered by arguing that the negligence issue was moot because the jury, by rejecting the strict liability claim, had necessarily found the product reasonably safe. Although the court went on to hold that the trial judge correctly took negligence from the jury, it took pains to announce its disagreement with the defendant's argument, stating:

> Contrary to respondent's assertion, however, we have held that strict liability and negligence are not mutually exclusive theories of recovery. *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 531, 452 P.2d 729 (1969). *See also Palmer v. Massey–Ferguson, Inc.,* 3 Wn. App. 508, 514, 476 P.2d 713 (1970). Negligence and strict liability are not mutually exclusive because they differ in focus: negligence focuses upon the conduct of the manufacturer while strict liability focuses upon the product and the consumer's expectation. *Compare Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936 (1964) *with Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975).

*Davis,* 102 Wn.2d at 72–73.

The *Davis* holding precisely governs the issue before us. Here the jury rejected the strict liability theory because obviously it was not persuaded that the motorcycle was "not reasonably safe" as measured by the expectations of the ordinary consumer. It was not thereby foreclosed from determining that appellants were negligent based on the evidence concerning appellants' acts or omissions in designing the machine.

## CONTRIBUTORY NEGLIGENCE

Appellants marshaled substantial evidence at trial that Shawn was at fault. One of their experts testified that he had carefully examined the motorcycle and was of the opinion that the throttle did not stick. An experienced rider testified that this type of motorcycle had brakes sufficiently effective to stop the machine halfway up the hill. The owner of the bike testified that its brakes were functional. Several experts opined that the accident was caused by

rider error, both from excessive speed and from unskillful handling. Nevertheless, the trial court granted judgment n.o.v. as to the jury's contributory negligence verdict. We agree with appellants that the court erred.

A judgment n.o.v. is proper only when, viewing the evidence and reasonable inferences therefrom most favorably to the nonmoving party, the court can say as a matter of law that no substantial evidence supports the verdict. *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 680 P.2d 46 (1984). Only in rare cases may contributory negligence be taken from the jury, and then only when all reasonable minds would agree the plaintiff exercised due care. *Bertsch v. Brewer*, 97 Wn.2d 83, 640 P.2d 711 (1982).

Respondents defend the ruling by arguing this syllogism: Liability could only be based on lack of a kill switch. Lack of a kill switch would not matter unless the throttle stuck. The jury had to conclude that the throttle stuck. It follows that an emergency was created. Therefore, the emergency doctrine absolves Shawn of negligence. We disagree.

The emergency doctrine excuses what would otherwise be a negligent reaction of a person confronted by an emergency, but only if his negligence did not contribute to the emergency. *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 668 P.2d 571 (1983). Even accepting the premise that the jury must have found that the throttle stuck, it does not follow that reasonable minds could only conclude that this was the sole cause of the emergency, if any there was. The owner of the motorcycle testified that he waved his arms and shouted for Shawn to slow down when he was 50 to 75 feet from the base of the hill. Respondents' own expert testified that the motorcycle was traveling about 26 miles per hour when it crested the hill. Its jump carried it 35 feet through the air before the crash. No evidence was presented, and no witness ventured to say, at what point the throttle stuck, if it did. Whether there was an emergency and, if so, whether Shawn's negligence contributed to it were jury issues. The jury was properly instructed on the emergency doctrine. Its resolution of

those issues should not have been disturbed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PETRIE and REED, JJ., concur.

Reconsideration denied December 5 and 18, 1984.