[No. E018260. Fourth Dist., Div. Two. Nov. 18, 1998.]

ROBBIE LAMBERT, Plaintiff and Respondent, v.
GENERAL MOTORS, Defendant and Appellant.

**COUNSEL**

Slovak & Baron, Lucien Van Hulle, McCutchen, Doyle, Brown & Enersen, David M. Heilbron, Leslie G. Landau and Stephanie S. Lamarre for Defendant and Appellant.

Michael J. Piuze and John Keiser for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Defendant General Motors (General Motors) appeals from a judgment against it after a jury trial and from an order denying its motions for new trial and judgment notwithstanding the verdict. Plaintiff Robbie Lambert (plaintiff) was injured in an accident which occurred while he was driving a 1985 Chevrolet Blazer manufactured by General Motors. Because the jury rendered an inconsistent verdict, we reverse.

### 2. *Facts*

After midnight on July 30, 1990, plaintiff was returning home from a camping trip at Lake Havasu. Plaintiff was driving a 1985 Chevrolet Blazer west on Interstate 40. The Blazer was owned by Tu V. Harley (Harley). Gerald Martin DeWitt (DeWitt), a passenger, was asleep next to Lambert. About 1:30 a.m., the Blazer, with its high beams on and traveling 65 to 70 miles per hour, passed a truck driven by Mark Gerald Pretz (Pretz). Pretz saw that plaintiff was slumped over the wheel and had probably fallen asleep. Pretz then watched the Blazer veer off the highway and begin to roll. Plaintiff suffered severe injuries rendering him quadriplegic. DeWitt was not seriously hurt.

Plaintiff alleged a cause of action for strict products liability against General Motors and for negligence against defendant Harley. Defendant Harley was dismissed before trial.

At trial, the expert testimony conflicted as to the cause of plaintiff's injuries. Plaintiff sought to prove that a defect, particularly in the roof and seat belt design, caused his injuries. General Motor's experts opined that plaintiff's injuries were inevitable and were not caused by any defect in the Blazer or any negligence by General Motors.

In answer to the first question of the special verdict form, "Was there a defect in the design of the 1985 Chevrolet Blazer?," the jury answered, "No." But in response to the fifth question, "Was General Motors negligent in the design of the 1985 Blazer?", the jury answered, "Yes" and that General Motor's negligence caused plaintiff's injury. The jury awarded plaintiff $15 million, reduced by one-half to $7.5 million because of plaintiff's comparative fault.

### 3. *Inconsistent Jury Verdicts*

 General Motors contends the special verdicts are inconsistent with each other and with the general verdict and require reversal. The trial court instructed the jury on two theories of General Motors's liability: strict liability and negligence.[1] The first question on the special verdict form pertains to the strict liability claim while the fifth question relates to the negligence claim. Both claims were founded, however, on General Motor's design of the Blazer. The jury responded that the Blazer was negligently, but not defectively, designed.

 Plaintiff argues that General Motors waived the issue regarding inconsistent verdicts by not objecting before the jury was discharged. This is not the law in California. Pursuant to Code of Civil Procedure section 619, no objection was required to preserve the issue for review. (*Remy v. Exley Produce Express, Inc.* (1957) 148 Cal.App.2d 550, 554-555 [307 P.2d 65]; *Cavallaro v. Michelin Tire Corp.* (1979) 96 Cal.App.3d 95, 105 [157 Cal.Rptr. 602]; *Godfrey v. Steinpress* (1982) 128 Cal.App.3d 154, 187 [180 Cal.Rptr. 95].)

---

[1]The parties have not considered the incomplete state of the pleadings. The complaint alleged only one cause of action for strict products liability against General Motors. The record does not show that the complaint was ever amended to add a negligence claim against General Motors. Nevertheless, the jury received instructions that plaintiff was seeking recovery from General Motors based on negligence. In closing argument, plaintiff argued General Motors's liability for negligence based on a failure to test or to warn. Furthermore, question 5 of the special verdict form asked the jury to decide whether General Motors was negligent in the design of the Blazer. Based on the foregoing, we conclude the jury could properly be instructed on a negligence claim, even though it was not asserted by plaintiff in the complaint. (Code Civ. Proc., § 607a; *Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 543-544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158], overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

Plaintiff also argues that General Motors invited any error because it prepared the special verdict form. But the record reflects that the special verdict form was prepared jointly. The original special verdict form was based on BAJI No. 16.11, a form for use in a negligence and products liability case involving comparative fault. The first question of BAJI No. 16.11 asks whether there was a defect in design of the subject product. Question 5 asks whether any defendant was negligent.

The original special verdict form altered the BAJI instruction slightly. The special verdict posed the first question thus: "Was there a defect in the design of the roof or driver's seat belt of the 1985 Chevrolet Blazer?" Then it asked, "Was General Motors negligent in the design of the roof or the driver's seat belt of the 1985 Blazer?"

Plaintiff's counsel objected to inclusion of the language concerning the roof and the seat belts as being unduly restrictive. He requested that the instruction "follow Baji [*sic*] just the way they designed it. Was there a defect in the design of the S-10 Blazer." The court then said, "We'll give 16.11 as it's written in Baji [*sic*]." General Motors's counsel offered to provide a clean copy of BAJI No. 16.11.

Ultimately, however, the special verdict form failed to track BAJI No. 16.11 exactly. First, it asked whether a design defect existed in the Blazer. Then, rather than asking generally whether General Motors was negligent, it asked specifically, "Was General Motors *negligent in the design* of the 1985 Blazer?" (Italics added.) But even though the special verdict form based both theories of liability on the adequacy of the design, there is no indication from the record that General Motors knowingly created or foresaw this problem. (See *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1687 [12 Cal.Rptr.2d 279].) The evolution of the special verdict form was the responsibility of both parties, not that of General Motors alone. Therefore, we decline to disregard the inconsistency of the verdict or to interpret it in favor of plaintiff for this reason.

■ The first principle of inconsistent general and special verdicts is that they must be harmonized if there is any "possibility of reconciliation under any possible application of the evidence and instructions. If any conclusions could be drawn thereunder which would explain the apparent conflict, the jury will be deemed to have drawn them." (*Hasson v. Ford Motor Co., supra*, 19 Cal.3d at pp. 540-541.) Furthermore, "if inconsistent *special* findings are rendered, one of which supports, and the other of which tends to negate, the general verdict, the latter will stand." (*Id.,* at p. 541.)

■ The trial court attempted to explain the inconsistent special verdicts by hypothesizing that the jury may have concluded that the roof of the

vehicle was not defectively designed but that General Motors negligently designed the seat belts. The heart of plaintiff's argument on appeal is that the inconsistent verdicts can be harmonized because there is evidence of negligence by General Motors different than negligent design, notwithstanding that the fifth question of the special verdict form asked specifically about negligent design.

Both parties have cited us to a host of authorities on this issue. Some cases have held that finding a product· is not defective can be consistent with finding negligence if the negligence claim does not involve design. For example, following *Hasson*, many courts have reconciled inconsistent verdicts by identifying evidence which supported an alternative negligence theory, such as a failure to warn. (*Hasson* v. *Ford Motor Co., supra*, 19 Cal.3d at pp. 543-544; *Wagner* v. *International Harvester Co.* (8th Cir. 1979) 611 F.2d 224, 229; *Peterson* v. *Little-Giant Glencoe Port. Elev.* (Minn.Ct.App. 1984) 349 N.W.2d 280, 284-285, affd. in part and reversed in part by *Peterson* v. *Little-Giant Glencoe Port. Elev.* (Minn. 1985) 366 N.W.2d 111; *Moorman* v. *American Safety Equipment* (Fla.Dist.Ct.App. 1992) 594 So.2d 795, 801-802; *Perry* v. *Red Wing Shoe Co.* (Fla.Dist.Ct.App. 1992) 597 So.2d 821, 823.) In another case involving an alternative theory of negligence, *Barry* v. *Manglass* (1981) 55 N.Y.2d 803 [447 N.Y.S.2d 423, 432 N.E.2d 125, 127], the appellate court held that evidence concerning misuse of the subject vehicle could account for the differing verdicts on the negligence and strict liability causes of action.

A few cases have tried to reconcile inconsistent verdicts involving defective and negligent design. For example, in *Brown for Hejna* v. *Yamaha Motor Corp., U.S.A.* (1984) 38 Wn.App. 914 [691 P.2d 577, 580], the court analyzed the inconsistency as follows: "Here the jury rejected the strict liability theory because obviously it was not persuaded that the motorcycle was 'not reasonably safe' as measured by the expectations of the ordinary consumer. It was not thereby foreclosed from determining that appellants were negligent based on the evidence concerning appellants' acts or omissions in designing the machine." In *Brown*, however, the jury was not asked to decide both whether a design was defective and whether it was negligent.

The majority of cases have held that a finding of negligent design is precluded if a jury finds no defect in design. (*Tipton* v. *Michelin Tire Co.* (6th Cir. 1996) 101 F.3d 1145, 1150-1151.) For example, the Eleventh Circuit held that "it must be deemed inconsistent for a jury to find that a product was not defective for purposes of strict liability, and yet that the product was negligently designed, *i.e.*, was defective, for purposes of establishing liability under a theory of negligence." (*Witt* v. *Norfe, Inc.* (11th Cir. 1984) 725 F.2d 1277, 1279.)

Courts have made similar pronouncements in *Mello* v. *K-Mart Corp.* (1st. Cir. 1986) 792 F.2d 1228, 1233; *Halvorson* v. *American Hoist & Derrick Co.* (1976) 307 Minn. 48 [240 N.W.2d 303, 307], overruled on other grounds in *Holm* v. *Sponco Mfg., Inc.* (1982) 324 Minn. 207 [324 N.W.2d 207]; *Lundgren* v. *McColgin* (1983) 96 A.D.2d 706 [464 N.Y.S.2d 317, 318]; *North Am. Catamaran Racing* v. *McCollister* (Fla.Dist.Ct.App. 1985) 480 So.2d 669, 671; *Consolidated Aluminum Corp.* v. *Braun* (Fla.Dist.Ct.App. 1984) 447 So.2d 391, 392; *Klugesherz* v. *American Honda Motor Co.* (Mo.Ct.App. 1996) 929 S.W.2d 811, 813.) The new Restatement of Torts agrees with this position: "[F]ailure to meet the requisites of . . . [section] 2 . . . , (b) [relating to defective design], . . . will defeat a cause of action under either negligence, [or] strict liability." (Rest.3d Torts (Proposed Final Draft, Apr. 1, 1997, approved by ALI May 1997) reporter's notes to § 2, com. n, pp. 120-121.)

Plaintiff here proposes that the jury verdict could have been based on a finding either of negligence or negligent design, which was not contradicted by a finding of no defect. We disagree because the record discloses no evidence of negligence except negligent design. The record is voluminous but throughout it demonstrates that the only evidence presented by plaintiff involved a design defect in the Blazer. The extensive expert testimony focused entirely on the design of the roof structure and the seat belt. In closing argument, plaintiff emphasized this point to the jury: "[S]hould General Motors have given a little thought and made a little effort to make the roofs stronger and/or to make the belts hold tighter? And that's what this case is about. Very, very, very simple." Plaintiff's counsel made only a few references to a negligence claim. In closing, he listed negligence as one of the three theories under which plaintiff was seeking recovery. He also said General Motors did not test the roof adequately and that General Motors failed to warn customers about the weakness of the roof.[2]

The difficulty with plaintiff's attempts to assert a negligence claim is that all plaintiff's examples of negligence involve the Blazer's design. Where liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge. (*Consolidated Aluminum Corp.* v. *Braun, supra,* 447 So.2d at p. 392; see *DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 350 [195 Cal.Rptr. 867].) Even if General Motors did not test the vehicle and did not warn customers about the weak roof, in the absence of a defect, those omissions would not be important. Testing, for example, would not disclose the existence of a defect where there is none. (*Mello* v. *K-Mart Corp., supra,* 792 F.2d at p. 1233.) Furthermore, the trial court's effort to explain the

---

[2]The court refused instructions on the failure to warn. No instruction was given on testing.

inconsistent verdicts by labeling the roof design as adequate but the seat belt design as negligent does not make sense. Nothing in the special verdict form permitted the jury to distinguish between types of defects.

Nor is there any evidence that the jury based its negligent design verdict on misuse by plaintiff. That theory was not advanced at trial. No misuse was asserted and the jury was not instructed on misuse or on failure to warn.

If the design of the Blazer was not defective, General Motors could not be deemed negligent. The jury could not have concluded that General Motors negligently designed the Blazer and at the same time conclude that it was not defective. (*Lundgren* v. *McColgin, supra,* 464 N.Y.S.2d at p. 318.) Therefore, the inconsistent verdicts are irreconcilable.

## 4. *Disposition*

Having determined that the verdict is fatally inconsistent and must be reversed, we do not need to address the multitude of evidentiary and misconduct issues raised by General Motors. The proper disposition, in our view, is to remand for a new trial. (Code Civ. Proc., § 657, subd. 6; *Cavallaro* v. *Michelin Tire Co., supra,* 96 Cal.App.3d at p. 100; *Campbell* v. *Zokelt* (1969) 272 Cal.App.2d 315, 318-319 [77 Cal.Rptr. 561].) Each party to bear its own costs.

Hollenhorst, Acting P. J., and Ward, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 17, 1999. Mosk, J., was of the opinion that the petition should be granted.