[No. 40104-1-I. Division One. April 5, 1999.]

KAREN LECY, *Individually and as Personal Representative, Respondent,* v. BAYLINER MARINE CORPORATION, *Appellant.*

MARCO BACICH, JR., ET AL., *Respondents,* v. BAYLINER MARINE CORPORATION, *Appellant.*

---

*Lane Powell Spears Lubersky*, by *Michael B. King* and *John S. Devlin III*; *Hancock Rothert & Bunshoft, L.L.P.* (*George J. Koelzer* and *Joshua S. Force*, of counsel), for appellant.

*Clinton Fleck & Glein*, by *Keith C. Thomson*; *Guy W. Beckett*; *Tehin & Partners* (*Nikolai Tehin* and *Michael E. Brown*, of counsel), for respondents.

Cox, J. — Under admiralty law, there is generally a distinction between product liability theories based on

strict liability and negligence.[1] But under the facts of this case, there is no practical distinction between these two theories as applied to the design of the boat door system that is the focus of the claims. The jury verdict here that there was no defective product design of the door system established, as a matter of law, that the manufacturer was not negligent in the design of that system. Because the trial court erred in giving a special verdict form that permitted the jury to consider the negligent design theory once it found that the product was not defective, we reverse the judgment against Bayliner Marine Corporation and remand for trial.

In late September 1992, after chartering a motor yacht designed and manufactured by Bayliner, Karen and Henry Lecy and Marco and Pamela Bacich set off on a pleasure cruise from Anacortes to the San Juan Islands. Soon after entering navigable waters between two islands, the boat encountered some turbulence. The wind increased and the swells rose to between two and three feet in height. The couples gathered in the upper cabin. While there, Henry Lecy apparently fell against the port-side cabin door. Lecy and the door both went overboard. He drowned in spite of the rescue efforts of his companions.

Karen Lecy commenced a wrongful death action against Bayliner and others. She later amended her complaint to add a claim for negligent infliction of emotional distress. The Baciches commenced a separate action for negligent infliction of emotional distress against the same defendants. The actions were consolidated for trial.

Over Bayliner's objection, the trial court gave a special verdict form that included interrogatories and alternative answers for strict liability and negligence. Using that form, the jury found that the vessel's door system was not unreasonably dangerous either as to its design or its construction. But the jury then found that Bayliner was

[1]See *East River S.S. Corp. v. Transamerica Delavel Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986).

negligent in the design of that door system. Based on that finding, the jury further found that Bayliner's negligent design of the door system was the proximate cause of Henry Lecy's death and the emotional distress claims of the Baciches and Karen Lecy. The jury assessed substantial damages for each of these claims.

Several posttrial motions followed. The court denied Lecy's motion for a new trial seeking additional damages. The court also denied Bayliner's motion for judgment as a matter of law that was based on multiple grounds. But the court granted Bayliner's renewed motion for a directed verdict based on Lecy's lack of capacity to sue on behalf of Henry Lecy's estate. The verdict for her in her individual capacity remained undisturbed. Thereafter, the court entered judgment on the jury's verdict.

Bayliner and Lecy both appeal.

Bayliner contends that the trial court erred by denying its CR 50(b) motion for judgment notwithstanding the jury verdict. It advances three different arguments to support its position. Because we reverse on the basis of the first argument, we need not reach the others.

Bayliner first contends that it was entitled to judgment as a matter of law under federal maritime law because the jury's finding in Bayliner's favor on the strict liability claim precluded it, as a matter of law, from considering the negligent design claim. We agree.

■ In reviewing a trial court's denial of a motion for judgment as a matter of law, we apply the same standard as that applied by the trial court.[2] No discretion is involved.[3] Judgment as a matter of law is proper only when we determine as a matter of law that there is no evidence, or reasonable inference from it, to support the verdict.[4] We interpret the evidence in the light most favorable to the

---

[2]*Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995).

[3]*Id.*

[4]*Id.*

nonmoving party, assuming the truth of that evidence and all inferences that flow from it.[5]

■ ■ The threshold question that we must resolve in our analysis is what substantive law governs. The parties correctly conclude that the law of admiralty applies. Admiralty jurisdiction applies when (1) the claims arise from an event that occurred on navigable waters and (2) the activity has the potential to affect maritime commerce.[6] Both prongs of this test are met here. The accident occurred on navigable waters. And the operation of a pleasure vessel on navigable waters bears a sufficient relation to maritime commerce to invoke admiralty jurisdiction.[7] "With admiralty jurisdiction comes the application of substantive admiralty law."[8]

The more difficult and crucial question is what substantive rule of admiralty governs. We first resolve that question and then proceed to apply that rule to this case.

■ Derived from both state and federal sources, "general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."[9] When there are no clear precedents in the law of admiralty, courts may "look to the law prevailing on the land."[10] Courts should also be guided by the aim of maintaining uniformity in admiralty law.[11] State law should be applied only where there is no governing federal statute

[5]*Goodman*, 128 Wn.2d at 371.

[6]*Sisson v. Ruby*, 497 U.S. 358, 366-67, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982); *Stanton v. Bayliner Marine Corp.*, 123 Wn.2d 64, 74, 866 P.2d 15 (1993), *cert. denied*, 513 U.S. 819 (1994).

[7]*Ruby*, 497 U.S. at 366-67; *Foremost*, 457 U.S. at 675-677.

[8]*East River S.S. Corp.*, 476 U.S. at 864.

[9]*Id.* at 864-65.

[10]*Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 259 (2d Cir. 1963), *cert. denied*, 376 U.S. 949 (1964).

[11]*See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 386-88, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970); *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 577, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974).

or judicially created admiralty rule and where there is no likelihood of jeopardizing the uniformity of admiralty practice.[12] In applying state law, courts should apply the general common law rather than the law of any particular state so as to further the goal of uniformity.[13]

Substantive maritime law recognizes both strict liability and negligence in the area of product liability.[14] But the parties here have not presented us with any maritime case that has addressed the precise question at issue here—whether a jury finding of no strict liability for design may be harmonized with a jury finding of negligent design. Our search reveals none. Thus, we turn to land-based federal and state cases and the RESTATEMENT (THIRD) OF TORTS for guidance.

At the time the parties argued the jury instructions, Bayliner objected to the wording of the special verdict form. In essence, Bayliner took the position that if the jury answered "no" to the interrogatory based on the strict liability for design defect, it should not be permitted to proceed to consider whether Bayliner had been negligent in the design of the door system. The trial court rejected the argument and gave the jury the special verdict form that allowed it to consider both theories, strict liability in design *and* negligent design.

At issue here is whether the special verdict form was proper in view of the jury's later answers to the interrogatories in that form. The relevant interrogatories and answers are set forth below:

**QUESTION NO. 1:** Was the door system for the port side of

---

[12]*Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 510 (9th Cir. 1984); *Port Lynch, Inc. v. New Eng. Int'l Assurety of Am., Inc.*, 754 F. Supp. 816, 820 (W.D. Wash. 1991); *Stanton*, 123 Wn.2d at 82.

[13]*See Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) (applying "general common law," including the RESTATEMENT (SECOND) OF TORTS, rather than state law, to determine the law of maritime trespass, in order to promote uniformity in general maritime law) (citing *Nissan Motor Corp. v. Maryland Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1111 (D. Md. 1982); 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 140-45 (2d ed. 1994).

[14]*East River*, 476 U.S. at 865. *See also* SCHOENBAUM *supra* note 13, at 176-77.

the pilot house of the vessel Checkmate unreasonably danger-ous as *designed* by Bayliner?

. . . **ANSWER:** NO.

. . . .

**QUESTION NO. 6:** Was the defendant negligent in the *design* of the door system in question?

. . . **ANSWER:** YES.

■ If the jury's answers to the special interrogatories that comprise a special verdict conflict, we attempt to harmonize the answers.[15] But we cannot do so here.

Federal and state case law in other jurisdictions is gener-ally in agreement that a jury's rejection of strict liability for design defect precludes a finding of negligent design.[16] In *Lambert*, for instance, a California appellate court recently concluded that the jury's answers to interrogato-ries on a special verdict form were irreconcilable.[17] The jury answered "no" to the question of whether the Blazer had a design defect, but answered "yes" to the question of whether General Motors was negligent in the design of the 1985 Blazer.[18] The court concluded that the jury's finding of no design defect in the Blazer was fatally inconsistent

[15]*Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 131, 875 P.2d 621 (1994).

[16]*See, e.g., Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150-51 (6th Cir. 1996) (jury's finding that a tire was not in a defective condition that was unreasonably dangerous to the user precluded it from concluding that tire had been negligently designed); *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1279 (11th Cir. 1984) (concluding that it was inconsistent for jury to find product not defective for purposes of strict liability, and yet that it was negligently designed); *Lambert v. General Motors*, 67 Cal. App. 4th 1179, 1185-86, 79 Cal. Rptr. 2d 657 (1998) (jury's finding that Blazer had no design defect precluded it from finding that General Motors negligently designed Blazer), *review denied* (1999); *North Am. Catamaran Racing Ass'n v. McCollister*, 480 So. 2d 669 (Fla. 1985) (jury finding of no defect in boat precluded finding of negligent design), *review denied*, 492 So. 2d 1333 (1986). *See also* John E. Theuman, Annotation, *Products Liability: Inconsistency of Verdicts on Separate Theories of Negligence, Breach of Warranty, or Strict Liability*, 41 A.L.R.4TH 9, at § 3[c] (1985 and 1998 Supp.).

[17]*Lambert v. General Motors*, 67 Cal. App. 4th 1179, 1186, 79 Cal. Rptr. 2d 657 (1998).

[18]*Id.* at 1182.

with its conclusion that General Motors had negligently designed it. The court rejected Lambert's attempt to rescue the verdict by arguing that the jury may have found General Motors negligent for failing to test the vehicle or for failing to warn customers about its weak roof. In the absence of any defect, reasoned the court, these alleged omissions could not have made any difference. Testing cannot reveal a defect that does not exist, and a manufacturer cannot be negligent for failing to warn about a nonexistent defect.[19]

In *Tipton*, the Sixth Circuit reached a similar result. There, by its answers to the interrogatories on a special verdict form, the jury found that the tire in question was not defective or unreasonably dangerous, but that Michelin had negligently designed or manufactured the tire.[20] The court concluded that these answers were irreconcilable because both the strict liability and the negligence theory depended on a finding that the tire was defective. Thus, once the jury found that there was no defect in the tire, it was precluded from finding that Michelin had negligently designed or manufactured that tire.[21] Bolstering the court's conclusion was the fact that the jury instructions blurred the distinction between the two theories of recovery.[22] For both strict liability and negligence, the jury was instructed to consider "the actions of an 'ordinarily prudent' manufacturer that is 'fully aware of the risk' of accidental injury."[23]

The RESTATEMENT (THIRD) OF TORTS lists cases that confirm this general trend.[24] And the Fifth Circuit land-based cases,

---

[19]*Lambert*, 67 Cal. App. 4th at 1185-86.

[20]The interrogatory also referred to Michelin's possible negligence in the sale or distribution of the tire, but the Sixth Circuit concluded that no evidence regarding these alternate theories had been presented at trial. *Tipton*, 101 F.3d at 1151.

[21]*Id.* at 1150.

[22]*Id.* at 1150-51.

[23]*Id.* at 1150.

[24]RESTATEMENT (THIRD) OF TORTS § 2, cmt. n (1998).

upon which Bayliner heavily relies, are expressly noted.[25] The Restatement commentators also refer to the "mischief caused by dual instructions on both negligence and strict liability."[26] The standard for product defect liability set forth in the Restatement is based on whether the product is "not reasonably safe" and whether the risk was foreseeable. Thus, reason the commentators, juries will necessarily consider the conduct of the manufacturer and do not need a separate negligence instruction to invite such consideration.[27]

■ Wisconsin, for public policy reasons in that state, adopts the view that a jury may properly consider a negligent design theory after it has rejected strict liability for design.[28] But that minority view cannot form the basis of an admiralty rule, where maintaining uniformity is of such importance.[29]

Lecy and the Baciches rely on two Washington cases to support their argument that the jury's answers to the interrogatories in the special verdict form do not conflict and should be given effect. For the reasons discussed below, we must reject this argument.

The first of these cases is *Davis v. Globe Mach. Mfg.*

---

[25]*Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256 (5th Cir. 1988) (concluding that jury's rejection of strict liability for electric blanket manufacturer precluded it from finding that manufacturer was negligent in designing or manufacturing the blanket); *Sprankle v. Bower Ammonia & Chem. Co.*, 824 F.2d 409, 413-14 n.5 (5th Cir. 1987) (decided under Mississippi law, court concluded that, where jury rejected strict liability, court's failure to instruct on negligence was harmless because "while a greater showing (i.e., the additional proof of negligence) may be required of a plaintiff suing under a negligent failure to warn theory than one suing under strict products liability theory, in no event is 'less' required)"; RESTATEMENT (THIRD) OF TORTS § 2, cmt. n at 108.

[26]*Id.*

[27]*Id.* at 109.

[28]*See Chaulk v. Volkswagen of Am., Inc.*, 808 F.2d 639, 641 n.4 (7th Cir. 1986) (noting that Wisconsin courts have consistently held that a verdict finding a products liability defendant negligent but not strictly liable for design is not inconsistent); *Greiten v. LaDow*, 70 Wis. 2d 589, 235 N.W.2d 677, 685 (1975) (Heffernan, J., concurring) ("there may be recovery for the negligent design of a product even though it is not unreasonably dangerous in the 402 A sense").

[29]*See Moragne*, 398 U.S. at 386-88; *Sea-Land Servs.*, 414 U.S. at 577.

*Corp.*[30] There, Davis brought a products liability claim on the basis of both strict liability and negligence. The negligence claim was based on the manufacturer's alleged failure to warn. The trial court dismissed the negligence claim at the close of Davis' case. Davis appealed that dismissal. Globe argued that the issue was moot because the jury found the product reasonably safe under the strict liability test. On the strict liability claim, the jury responded "no" to the following interrogatory: "Did the defendant supply a product which was 'not reasonably safe' at the time it left defendant's control or fail to give an adequate warning necessary to make the use of the product reasonably safe?" The Supreme Court rejected Globe's argument, stating:

> Negligence and strict liability are not mutually exclusive [theories of recovery] because they differ in focus: *negligence focuses upon the conduct of the manufacturer while strict liability focuses upon the product and the consumer's expectation.*[31]

But the court nonetheless concluded that the trial court properly dismissed the negligence claim because there was not sufficient evidence to support it.

Relying on the italicized statement above, Lecy and the Baciches argue that the jury verdict here can be reconciled under *Davis* because negligence focuses on the conduct of the manufacturer, while strict liability focuses on the product. But the record before us refutes this argument, and *Davis* is therefore distinguishable.

 Here, the court gave the jury the standard instruction for strict liability for design defect. The focus of the instruction is on what makes a product not reasonably safe (or unreasonably dangerous) as designed. A product may be unreasonably dangerous in two separate ways. First, under the "risk-utility" test, a product may be unreasonably dangerous as designed if:

---

[30]102 Wn.2d 68, 684 P.2d 692 (1984).

[31]*Davis*, 102 Wn.2d at 72 (emphasis added).

at time of manufacture, the likelihood that the product would cause the plaintiff's harm or similar harms, and the seriousness of those harms, outweighed the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness.[32]

Second, under the "consumer expectations" test, a product may be unreasonably dangerous as designed if it is unsafe beyond the extent that would be reasonably expected by the ordinary consumer.[33] Regarding negligence, the jury was instructed that negligence is the "failure to exercise ordinary care."

Because the instruction on unreasonably dangerous design required the jury to engage in risk-utility balancing, it simply cannot be argued that this inquiry did not involve consideration of the manufacturer's conduct in designing the door system. Thus, the reliance on *Davis* for the proposition that strict liability and negligence do not overlap because the former is focused solely on the product while the latter is focused on the manufacturer's conduct is misplaced. Contrary to the contentions of Lecy and the Baciches, the jury here *did* consider the reasonableness of the manufacturer's conduct when it arrived at its conclusion that the door system was not unreasonably dangerous as designed.[34]

Moreover, *Davis* cannot guide our decision here. While it states the uncontested proposition that strict liability and

---

[32]*Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 326, 971 P.2d 500 (1999).

[33]*Id.* at 327.

[34]Some courts have acknowledged that the risk-utility test in design defect cases is actually a negligence approach, in that it expressly looks at the reasonableness of the manufacturer's choices. *See, e.g., Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 686-87, 691, 365 N.W.2d 176 (1984) (acknowledging that "pure negligence, risk-utility" analysis in the design defect realm always involves assessments of decisions made by manufacturers when designing their products). *See also* RESTATEMENT (THIRD) OF TORTS § 2, cmt. n at 109 (because manufacturing defect claim, unlike design defect claim, is not necessarily subject to risk-utility or "reasonableness" balancing, the argument that negligence theory is necessary to focus jury on the manufacturer's conduct is more tenable).

negligence are not mutually exclusive theories, it was not presented with the question—and thus did not decide—whether a finding of reasonably safe design precludes a finding of negligent design.

Lecy and the Baciches also rely on *Brown v. Yamaha Motor Corp.*[35] But reliance on this state case to resolve the admiralty question before us is misplaced.

There, Brown brought separate claims based on strict liability and negligence against the maker of a motorbike. The focus of the evidence was that the accident could have been prevented had Yamaha designed the bike with a kill switch. The jury rejected the strict liability claim, finding that the bike was reasonably safe when it left the manufacturer's control. But it nonetheless found that the manufacturer was negligent in designing the product.[36] And, relying on *Davis*, the court held that the jury's finding that the motorcycle was "reasonably safe" did not preclude it from finding that it had been negligently designed.[37]

Mindful of the need for uniformity in admiralty cases, we decline to adopt the rule of *Brown* in this admiralty case. And we question whether it correctly reads *Davis*. As noted above, *Davis* states the general proposition that strict liability and negligence are generally separate and nonexclusive theories of recovery. But it did not specifically conclude, as *Brown* suggests, that strict liability and negligence are separate and nonexclusive theories where both theories are based solely on the product's design. Moreover, in *Brown*, the jury was instructed only on the consumer expectations test for strict liability. Thus, *Brown* could conclude that the jury did not consider the manufacturer's conduct in evaluating the strict liability claim.[38] Here, in contrast, the jury was also instructed on the risk-utility test, which does

---

[35] 38 Wn. App. 914, 691 P.2d 577 (1984).

[36] *Brown*, 38 Wn. App. at 919.

[37] *Id.*

[38] *Id.*

consider the manufacturer's conduct in adopting the chosen design.

Finally, we note that Lecy and the Baciches made no argument that *Davis* and *Brown* are consistent with the majority of cases, both state and federal, that have considered this question. They also advance no argument to support a conclusion that the rule of *Davis* and *Brown* should prevail over the consensus rule of the cases from other jurisdictions.[39]

In sum, we conclude that the reasoning of the case law from other jurisdictions and the commentary in the RE-STATEMENT (THIRD) OF TORTS reflects the general common law approach to the question presented here. Applying this rule, we conclude that the jury's finding that the door system was not unreasonably dangerous as designed precludes it from finding that the door system was negligently designed.

We emphasize that our holding is limited to the situation where the jury finds a product not unreasonably dangerous *as designed*, but then purports to find that same product was negligently *designed*. We recognize that where, for instance, the jury is presented with a strict liability *design* defect claim and a negligent *manufacture* claim, a jury's rejection of strict liability may not preclude its finding of negligence. Because the two bases of liability are separate and do not necessarily overlap, the jury may properly reject strict liability, yet find negligence.[40]

At oral argument, Lecy and the Baciches suggested

---

[39]*Cf. Stanton,* 123 Wn.2d at 87 (where there is a judicially created admiralty rule on economic loss, federal maritime law preempts conflicting state law on that issue); *Hoddevik v. Arctic Alaska Fisheries Corp.,* 94 Wn. App. 268, 281, 970 P.2d 828 (1999) (concluding, in contrast to *Stanton* that there was no judicially fashioned admiralty rule on point and further concluding that Washington's great interest in applying its antidiscrimination law to employers outweighed the possible burden on the federal interest in uniform maritime law).

[40]*See, e.g., Sterner v. U.S. Plywood-Champion Paper, Inc.,* 519 F.2d 1352 (8th Cir. 1975) (apparently applying Iowa law and holding the verdict not inconsistent because the jury could have determined the product was fit for its intended use as long as the manufacturer gave proper warnings about the product's dangers); *Byrd v. Proctor & Gamble Mfg. Co.,* 629 F. Supp. 602 (E.D. Ky. 1986) (finding that product was not defective was consistent with finding of negligence where jury

that the jury may have arrived at its seemingly inconsistent verdict under a res ipsa loquitur negligence theory. But this theory was not presented below, the jury was not instructed on it, and Lecy and the Baciches did not argue the theory in their briefs on appeal. Therefore, we decline to consider this argument.

Lecy and the Baciches also suggested that the jury may have agreed with their argument that Bayliner designed the door system more for aesthetics than for safety. But because this suggestion does not provide a basis for reconciling the inconsistent answers to the interrogatories, we reject it.

We similarly reject the Baciches' contention that their claims should not be affected by the inconsistency in the special verdict form. The Baciches are correct that the jury here was instructed that it was to treat each party's claims as a separate lawsuit. But the Baciches cannot escape the fact that they presented their claims to the jury under the same special verdict form.[41] Because we have concluded that the jury's answers to the interrogatories on that form preclude a finding of negligence, their negligence claim necessarily fails.

Because we reverse on the basis discussed, we need not reach Bayliner's additional arguments in support of reversal. Likewise, we need not reach the cross-appeal by Lecy.

found insufficient warning concerning possible misuse); *Peterson v. Little-Giant Glencoe Portable Elevator Div. of Dynamics Corp. of Am.*, 349 N.W.2d 280 (Minn. 1984) (jury findings of negligence but no strict liability consistent where liability based on more than one course of conduct by manufacturer), *aff'd in part, rev'd in part*, 366 N.W.2d 111 (Minn. 1985); *Hasson v. Ford Motor Co.*, 19 Cal. 3d 530, 564 P.2d 857, 138 Cal. Rptr. 705, 99 A.L.R.3D 158 (1977) (jury's negligence verdict was not inconsistent with its finding of no strict liability for manufacturer where the jury logically could have found that the defect arose later and that the manufacturer was therefore negligent in failing to warn of the potential hazard). *See also* Theuman, *supra* note 16, at § 3[a] (1985 and Supp. 1998).

[41]*See, e.g., Nania v. Pacific N.W. Bell Tel. Co.*, 60 Wn. App. 706, 709-10, 806 P.2d 787 (1991) (doctrine of "invited error" prevents a party from complaining about an inconsistency that arises from a special verdict form to which the party did not object at trial).

We reverse the judgment and remand for a new trial.[42]

AGID, A.C.J., and ELLINGTON, J., concur.

---

[42]*See Tincani*, 124 Wn.2d at 131 (citing *Blue Chelan, Inc. v. Department of Labor & Indus.*, 101 Wn.2d 512, 515, 681 P.2d 233 (1984) (if court cannot reconcile jury's answers on special verdict form, "[n]either a trial court nor an appellate court may substitute its judgment for that which is within the province of the jury. . . . [T]he only proper recourse is to remand the cause for a new trial.")).