[No. 19464-7-III.   Division Three.   August 21, 2001.]

CULLY C. RASMUSSEN, *as Personal Representative*, ET AL., *Appellants*, v. EUGENE L. BENDOTTI, *Respondent*.

948

*Douglas J. Takasugi* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for appellants.

*Thomas F. O'Connell* (of *Davis, Arneil, Dorsey, Kight*), for respondent.

SWEENEY, J. — To hold a defendant liable for negligence, the plaintiff must show that the defendant proximately caused the plaintiff's injury. *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998). Proximate cause is generally a question of fact. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Here, the trial court, sitting as the fact finder, found that any negligence on the part of Eugene Bendotti (Gene) was "too attenuated" from Bonny Jo Bendotti's death to hold Gene legally liable. Gene was Bonny's scuba diving buddy. He failed to properly attach a power inflator to his buoyancy compensator. This required an emergency ascent. Bonny then drowned after her equipment became entangled in a rope. We conclude that the trial court's finding is adequately supported by the evidence, and affirm the judgment dismissing Cully, Adam, and Brandy Jo Rasmussen's wrongful death suit.

## FACTS

Our factual summary here follows the trial court's unchallenged findings of fact, including those denominated as conclusions of law. *Hagemann v. Worth*, 56 Wn. App. 85, 89, 782 P.2d 1072 (1989). We refer to Mr. and Mrs. Bendotti as Gene and Bonny. We intend no disrespect by doing so. We use their first names simply for clarity and ease of reference.

Bonny and Gene were married in 1990. They got interested in scuba diving and completed the necessary scuba certification in April 1996. Their training included an open water dive course and an advanced open water dive course.

In the fall of 1996, the Bendottis were asked to help recover a snowmobile from Lake Wenatchee. They agreed to

help. On October 4, they made one or two dives, located the snowmobile in approximately 100 feet of water, and marked it with a 50-foot line.

The Bendottis returned to Lake Wenatchee on November 2. At first they were unable to locate the snowmobile or marker line. They located the snowmobile during the second dive and marked it with a longer line and buoy. They then broke for lunch and refilled their air tanks. After the third dive, the Bendottis and others with them decided to try to attach a line to the snowmobile to drag it from the lake. Both descended for their fourth dive.

Gene had, however, inadvertently failed to reconnect his power inflator to his buoyancy compensator. A power inflator inflates a buoyancy compensator which then allows the diver to rise to the surface. And "[b]ecause he and Bonny did not adequately perform buddy and self-equipment checks, it was not discovered." Clerk's Papers (CP) at 561. Once in the water, Gene discovered the equipment problem and immediately surfaced. Bonny, however, became entangled in a rope at the 40-foot level "perhaps while ascending herself." CP at 561. She was unable to disentangle herself and drowned.

Cully, Adam, and Brandy Jo Rasmussen are Bonny's children. They sued Gene on behalf of themselves and Bonny's estate. The court denied Gene's motion for summary judgment and heard the matter without a jury.

The court concluded that Gene owed a duty to Bonny as her scuba diving "buddy." Left unstated, but easily inferable given the court's other conclusions, is the finding that Gene breached that duty by failing to reconnect his power inflator. The court then goes on to conclude that because Gene's failure to reconnect his power inflator was an emergency, he acted as a reasonably prudent diver when he ditched his weight belt and ascended. It also concluded that Gene's duty to Bonny terminated because of this emergency. The court then held that the Rasmussens "failed to prove by a preponderance of the evidence any breach of duty by Gene to Bonny occurring prior to Gene facing his own personal

emergency." CP at 562. The court dismissed the Rasmussens' claims with prejudice.

The Rasmussens moved for reconsideration. The court denied the motion, but supplemented its original conclusions of law. It concluded that both Gene and Bonny should have checked Gene's scuba equipment prior to their fourth dive. But their failure to do so placed only Gene at risk. In its supplemental conclusions, the court further reiterated that a diver's primary duty is to himself, or herself, and that Bonny became entangled only after Gene faced his own emergency. And Gene's duty to Bonny terminated once he faced his own emergency.

Finally, the court concluded that Gene's failure to attach his power inflator was "too attenuated" from Bonny's subsequent entanglement in the rope to hold him legally responsible for her death. CP at 435.

The Rasmussens appeal the judgment dismissing their claims. Gene appeals the denial of his pretrial motion for summary judgment.

## ASSIGNMENTS OF ERROR

The Rasmussens assign error to a number of the court's conclusions of law. And those assignments of error delineate the issues before us.

The Rasmussens assign error to the following original conclusions of law, which we paraphrase:

- That Gene's legal duty to Bonny terminated when he was faced with his own emergency during the fourth dive. Conclusion of Law 4.
- The Rasmussens did not prove any breach of duty by Gene to Bonny prior to Gene's facing his own personal emergency. Conclusion of Law 5.

The Rasmussens assign error to the following supplemental conclusions of law, which we also paraphrase:

- Failure to perform equipment checks, their own and their buddy's, put Gene solely at risk. Supplemental Conclusion of Law 3.

- If Gene had improperly loaded a spear gun which discharged and struck Bonny, his conduct at the surface would have increased the risk to Bonny. But that did not occur. Supplemental Conclusion of Law 4.

- Gene's failure to check his equipment did not put Bonny at an increased risk of harm. Supplemental Conclusion of Law 5.

- When Gene surfaced, he acted reasonably and his duty to his dive buddy terminated. Supplemental Conclusion of Law 7.

- The connection between Gene's failure to attach his power inflator on the surface and Bonny's subsequent entanglement (and death) is too attenuated to hold Gene legally responsible. Supplemental Conclusion of Law 9.

- To hold Gene responsible would make him a guarantor of Bonny's safety. Supplemental Conclusion of Law 10.

From these assignments of error, the Rasmussens make four basic arguments:

(1) After concluding that Gene owed a duty of care to Bonny (a duty owed by all dive buddies), the court then inconsistently goes on to conclude that Gene did not breach that duty—despite the fact that Gene negligently failed to reconnect his power inflator and perform adequate equipment checks before the fourth dive, contrary to standard diving practices.

(2) After concluding that Gene owed a duty to Bonny, the court then goes on to conclude that that duty terminated when Gene was faced with his own emergency. The Rasmussens argue that the duty should not have terminated because the emergency Gene was responding to was one of his own making. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 197, 668 P.2d 571 (1983); *Pryor*

*v. Safeway Stores, Inc.*, 196 Wash. 382, 387-88, 83 P.2d 241 (1938), *overruled on other grounds by Blaak v. Davidson*, 84 Wn.2d 882, 529 P.2d 1048 (1975).

(3) The court concluded that Gene's failure to perform a self-equipment check did not put Bonny at any increased risk of harm. The Rasmussens urge that if Gene had a duty, as the court found, then Bonny was certainly within the class of people that the duty was intended to protect.

(4) Finally, the court concluded that the connection between Gene's negligence and Bonny's death was too attenuated for the death to proximately flow from the breach of duty. Again, the Rasmussens argue that the very purpose of diving with a buddy, a standard obligatory diving practice, is so one diver is available to assist another who encounters difficulty underwater.

## STANDARD OF REVIEW

■ The Rasmussens challenge only the court's conclusions of law. The findings of fact are therefore verities on appeal. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 941, 845 P.2d 1331 (1993).

■ We review the court's conclusions of law by first determining whether the court applied the correct legal standard to the facts under consideration. Our review is de novo. *See State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981) (appellate court determines questions of law). Every conclusion of law, however, necessarily incorporates the factual determinations made by the court in arriving at the legal conclusion (or ultimate fact). *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981) (the logical flow is evidence to basic facts to ultimate facts). For example, the fact that a driver ran a red light is clearly a finding of fact and, therefore, a decision which would demand our deference. But the court's conclusion of law from that finding that the defendant ran the light and was therefore negligent would be a conclusion (running a red light is negligent), which we would review de novo.

■ ■ To be more specific, and address the questions raised here, the question of whether Gene had a duty to Bonny as her diving buddy is a question of law which we review de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Likewise, the question of whether an emergency created by a breach of that duty (failure to check his equipment) terminated that duty to his buddy (Bonny) is also a question of law, which we review de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

But the question of the proximal relationship between any breach of Gene's duty and Bonny's subsequent death is a mixed question of law and fact, and so requires our deference. *See Bell v. McMurray*, 5 Wn. App. 207, 213, 486 P.2d 1105 (1971) (proximate cause is a mixed question of law and fact, and "is usually for the trier of facts").

## NEGLIGENCE

■ ■ We begin with the hornbook statement of elements for a cause of action in negligence. Negligence requires a duty specifically to the plaintiff or to the class or group of people which includes the plaintiff. *See Rodriguez v. Perez*, 99 Wn. App. 439, 444, 994 P.2d 874 ("When a duty is owed to a specific individual or class of individuals, that person or persons may bring an action in negligence for breach of that duty."), *review denied*, 141 Wn.2d 1020 (2000); *Torres v. City of Anacortes*, 97 Wn. App. 64, 73, 981 P.2d 891 (1999), *review denied*, 140 Wn.2d 1007 (2000). The plaintiff must then prove that a breach of the duty proximately caused the injury complained of. *Hertog*, 138 Wn.2d at 275; *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998); *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998). Finally, of course, there must be some injury. *Hertog*, 138 Wn.2d at 275. But injury is not at issue here.

DUTY

■ ■ The existence of a duty is a question of law. *Hertog*,

138 Wn.2d at 275. Whether the defendant owed the plaintiff a duty, however, turns on the foreseeability of injury; that is, whether the risk embraced by the conduct exposes the plaintiff to injury. *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). "The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent." *Id*.

■ And on this question, the trial judge's conclusions of law, while a bit inconsistent, are nonetheless reconcilable.

First, and foremost, the court concluded unequivocally that:

- "[A] scuba diver owes a duty to his buddy . . . ." Conclusion of Law 2, CP at 562.

- "Because Gene and Bonny were dive buddies on November 2, 1996, Gene owed a duty to Bonny to act in the manner of a reasonably prudent diver." Conclusion of Law 3, CP at 562.

The court's conclusions are based on its unchallenged factual finding that: "Bonny and Gene received instruction to always dive with a buddy. One reason for this was safety, as a buddy can assist a diver who encounters difficulties underwater." Finding of Fact 8, CP at 546.

BREACH OF A DUTY OF CARE

■ ■ Whether a duty of care has been breached is a question of fact. *Hertog*, 138 Wn.2d at 275. And the court's findings of fact on this question are instructive. The court found that "[s]tandard diving practices include performing a buddy check and self equipment check prior to each dive. If these checks had been performed, any problem with Gene's power inflator would likely have been discovered." Finding of Fact 25, CP at 555. The court also found that Gene and Bonny did not perform a buddy check before the fourth and fatal dive. Findings of Fact 26 and 47.

Given the duty owed by one diver to his or her buddy and the court's unchallenged finding of fact that those duties were not performed, the legal conclusion that Gene

breached his duty to Bonny is inescapable. *See Williams*, 96 Wn.2d at 221 ("Where findings necessarily imply one conclusion of law the question still remains whether the evidence justified that conclusion." (emphasis omitted)). Duties are not owed in the abstract. Nor are duties owed to oneself. Here, the duty owed was to that population intended to be protected by the buddy checks. And that population obviously includes a diver's buddy—here, Bonny.

*Emergency Doctrine*

Having concluded that Gene owed a duty to Bonny as her dive buddy, the court then went on to conclude that that duty terminated with Gene's own personal emergency. Conclusion of Law 4. The issue raised by the Rasmussens' assignment of error to this conclusion is whether a duty of care ends with an emergency when the emergency is the result of the defendant's breach of a duty?

The emergency doctrine was developed at common law and states the commonsense proposition that a person faced with an emergency should not be held to the same standards as someone given time for reflection and deliberation. *Sandberg v. Spoelstra*, 46 Wn.2d 776, 782, 285 P.2d 564 (1955).

The trial judge here concluded that "when Gene was required to so act [because of his personal emergency], his legal duty to Bonny was terminated." Conclusion of Law 4, CP at 562.

The emergency here was Gene's discovery of the results of his earlier omission. That is, he discovered that he had failed to properly connect his power inflator to his buoyancy compensator. But that emergency was of his own making. And because of that, he is not entitled to the benefit of the emergency doctrine. *McCluskey v. Handorff-Sherman*, 68 Wn. App. 96, 111, 841 P.2d 1300 (1992) ("It is a well-established principle that the emergency doctrine does not apply where a person's own negligence put him in the emergency situation."), *aff'd*, 125 Wn.2d 1, 882 P.2d 157 (1994).

A defendant is entitled to the benefit of the emergency doctrine when he or she undertakes the best course of action given an emergency not of his or her own making. *Brown*, 100 Wn.2d at 197. So, for example, if Gene, or for that matter Bonny, had inadvertently disconnected Gene's power inflator while diving and Gene reacted to the emergency by immediately ascending, his conduct could be judged based on the emergency. But here, the court had already found that he had inadvertently, i.e., negligently, failed to perform his self and buddy checks. His conduct must then be evaluated at that time (when he was obligated to check his equipment) and not when he later discovered his negligent omission and reacted to it.

The court then erred by concluding that Gene's emergency cut off any duty he owed to Bonny. *Brown v. Yamaha Motor Corp.*, 38 Wn. App. 914, 920, 691 P.2d 577 (1984) (emergency doctrine is applicable only if the defendant's negligence did not contribute to the emergency).

PROXIMATE CAUSE

The court concluded that "[t]he connection between Gene Bendotti's failure to attach his power inflator on the surface and Bonny Bendotti's subsequent entanglement is too attenuated a connection to hold Gene Bendotti legally responsible for Bonny Bendotti's death[.]" Suppl. Conclusion of Law 9, CP at 435.

Proximate cause has two discreet elements. The first, cause in fact, requires some physical connection between the act (the failure to connect the power inflator) and the injury (Bonny's death). *Meneely v. S.R. Smith, Inc.*, 101 Wn. App. 845, 862-63, 5 P.3d 49 (2000). The second element of proximate cause involves legal causation. *Id*. And that is a policy consideration for the court. *Id*. at 863. The consideration is whether the ultimate result and the defendant's acts are substantially connected, and not too remote to impose liability. *Id*. It is a legal question involving logic, common sense, justice, policy, and precedent. *Id*.

The question of proximate cause then is a mixed question

of law and fact. *Bell*, 5 Wn. App. at 213. We must then defer to the trial judge's determination of proximate cause because it necessarily entails factual considerations of "but-for" causation. Here, the question simply put is, if Gene had properly connected his power inflator, would Bonny be alive today? The court held that the connection between Gene's breach and Bonny's death was too attenuated to say that had he connected his power inflator she would still be alive. The evidence amply supports this fact.

Jon Hardy, a scuba diving expert, testified that there was no connection between Gene's failure to attach his power inflator and Bonny's subsequent entanglement. Nor did he believe there was a connection between the loss of buddy contact and Bonny's death. He further stated that he believed the proximate cause of Bonny's death was her failure to carry a dive knife.

How Bonny became entangled and why she was not able to free herself is not known. Also unknown is whether Gene could have saved her in any event. So, whether Gene could have saved her is speculation. And speculation is not sufficient to establish proximate cause. *Jankelson v. Sisters of Charity*, 17 Wn.2d 631, 643, 136 P.2d 720 (1943) (" 'The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another.' ") (quoting *Frescoln v. Puget Sound Traction, Light & Power Co.*, 90 Wash. 59, 63, 155 P. 395 (1916)).

## CONCLUSION

We affirm the trial court's judgment in favor of Gene because its conclusion that the result (Bonny's death) was too attenuated from Gene's breach of his duty (failure to properly attach his power inflator) is amply supported by the evidence.

BROWN, A.C.J., and KATO, J., concur.

Recinsideration denied September 26, 2001.