Filed 11/15/13  Boekamp v. General Motors CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HERBERT BOEKAMP et al., | D062390 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00069017-CU-PL-EC) |
| GENERAL MOTORS, LLC, | |
| Defendant and Appellant; | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]) |
| FIRST AMERICAN SPECIALTY INSURANCE COMPANY, | |
| Intervener and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on October 28, 2013, be modified as

follows:

On page 16, third line from the bottom, immediately after the phrase "multiple

times for inspection and repair of dashboard electrical components," add as footnote 4 the

following footnote.

In a petition for rehearing, the Boekamps assert that "the evidence shows
that *no one*, other than GM at the time of [the Corvette's] manufacture,
entered [the dashboard] area."  We disagree.  Herbert testified on direct

examination that he took the Corvette to the dealer multiple times because the radio made "a bizarre noise" and indicator lights went on when they should not have. He further testified that on one occasion, the dealer "kept the car for two days, and I don't know what they do as far as how they test it or whatever." When GM's counsel asked Herbert on cross-examination what the dealer did to fix the electrical problems, the Boekamps' counsel objected that the question "asks for speculation," and the court sustained the objection. Further, although no witness from the dealer testified about what repairs were made or attempted on the Boekamps' Corvette, repair orders introduced at trial stated the dealer "did multiple radio tests" and replaced a light bulb. Thus, the evidence does not establish that no one except GM entered the dashboard area, as the Boekamps assert. In fact, the evidence supports an inference the dealer entered that area to try to fix the problems with the radio and indicator lights of which Herbert complained.

There is no change in the judgment.

The petition for rehearing is denied.


HUFFMAN, Acting P. J.

Copies to: All parties

Filed 10/28/13  Boekamp v. General Motors CA4/1 (unmodifed version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HERBERT BOEKAMP et al., | D062390 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00069017-CU-PL-EC) |
| GENERAL MOTORS, LLC, | |
| Defendant and Appellant; | |
| FIRST AMERICAN SPECIALTY INSURANCE COMPANY, | |
| Intervener and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed.

Crowell & Moring and J. Daniel Sharp for Defendant and Appellant.

Madison Harbor and Ali Parvaneh for Plaintiffs and Respondents.

Law Offices of Edward W. Hess, Jr., and Edward W. Hess, Jr., for Intervener and Respondent.

General Motors, LLC (GM) appeals the judgment awarding damages to Herbert, Patti, Ashley, Jason, and Jake Boekamp[1] and their homeowners' insurer for the destruction of the Boekamps' residence by a fire that originated in a vehicle manufactured by GM. GM argues the trial court erred by instructing the jury on the doctrine of res ipsa loquitur, and the jury's finding that GM was negligent is inconsistent with its finding that the car did not fail to perform as safely as an ordinary consumer would have expected. We agree the jury's findings are inconsistent and therefore reverse the judgment.

I.

FACTUAL BACKGROUND

Herbert Boekamp bought a new Chevrolet Corvette from an authorized GM dealer in September 2005. Over the next several years, Herbert took the Corvette back to the dealer on multiple occasions with complaints that the radio emitted a high-pitched sound and maintenance indicator lights went on for no reason. The dealer was unable to identify the cause of these problems or to correct them. Herbert also had routine maintenance regularly performed on the Corvette, and had its rear bumper repaired after a low-impact collision.

One evening in January 2010, Patti drove the Corvette home and parked it in the garage of the Boekamps' residence. A few hours later, a fire started in the garage and eventually destroyed the Boekamps' house and all its contents.

---

[1] For brevity, we refer to members of the Boekamp family by their first names. In so doing, we intend no undue familiarity or disrespect.

Several people investigated and reported on the fire. Responding firefighters prepared a report that stated the fire started in one of the vehicles parked in the garage. Investigators hired by the Boekamps' homeowners' and automobile insurers concluded the fire was electrical and started in the dashboard of the Corvette. A mechanical engineer retained by the Boekamps, Ramaswami Vasudevan, also determined the fire started in the Corvette. Vasudevan's theory was that (1) fretting corrosion of circuitry in the motor controlling the movement of the steering column caused the motor not to shut off when it should have, leading to excessive heat buildup in the motor; (2) the overheating gradually melted the insulation around some wires and terminals in the motor, leaving them exposed; and (3) electrical arcing occurred between the exposed terminals, generating intense heat that ignited the Corvette. An electrical engineer retained by GM, Thomas Livernois, disagreed with Vasudevan, calling his theory "impossible." Livernois examined the remains of the burned Corvette but found nothing indicating an electrical or other cause of the fire.

II.

PROCEDURAL BACKGROUND

The Boekamps filed a complaint against GM for damages. In a count labeled negligence, they alleged that GM "fail[ed] to properly design and/or manufacture the Corvette in such a manner so that it would not catch fire after normal and reasonable use," and that this failure resulted in a fire that destroyed their residence. In a count labeled strict products liability, the Boekamps alleged GM "designed and/or manufactured [the Corvette] in such a defective manner that, after normal and reasonable

3

use, it ignited causing the destruction of [their] [r]esidence." The Boekamps' homeowners' insurer, First American Specialty Insurance Company (First American), intervened to recover from GM the money it had paid out on the Boekamps' homeowners' insurance policy. GM filed an answer asserting a general denial and several affirmative defenses.

The case proceeded to a jury trial. After the close of evidence, the court gave the jury instructions on strict products liability based on the consumer expectation test for a design defect (CACI Nos. 1200, 1203); negligence in the design or manufacture of the product (CACI Nos. 1220, 1221); and, over GM's objection, res ipsa loquitur (CACI No. 417). The jury returned a special verdict on liability. Question No. 4 asked, "Was [GM] negligent?" The jury answered, "Yes." Question No. 9 asked, "Did the 2005 Chevrolet Corvette fail to perform as safely as an ordinary consumer would have expected when used or misused in an intended or reasonably foreseeable way?" The jury answered, "No." In a separate damages verdict, the jury awarded the Boekamps damages for property loss and emotional distress.

The trial court entered judgment on the jury's liability and damages verdicts, dividing the property loss award between the Boekamps and First American. The court denied GM's motion for a new trial, which was made on the grounds, among others, that the jury's inconsistent verdicts on negligence and strict products liability were "against law," and that the court's instruction of the jury on the doctrine of res ipsa loquitur was an "[e]rror in law." (Code Civ. Proc., § 657, subds. 6 & 7.)

4

DISCUSSION

GM seeks reversal of the judgment on the grounds the jury made inconsistent findings on the Boekamps' negligence and strict products liability claims, and the trial court erred by instructing the jury on the doctrine of res ipsa loquitur. The Boekamps counter that the jury's findings can be reconciled, and the court properly gave instructions on res ipsa loquitur. For reasons we shall explain, we agree with GM that the jury's inconsistent liability findings require reversal.

A. *Standard of Review*

The correctness of a special verdict is analyzed as a matter of law, and whether its findings are inconsistent is subject to de novo review on appeal. (*Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1500; *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358.) Findings in a special verdict are inconsistent when they are based on the same evidence but determine a material issue in contradictory ways. (*Cavallaro v. Michelin Tire Corp.* (1979) 96 Cal.App.3d 95, 101.) To decide whether findings in a special verdict are inconsistent, we review the findings in the context of the record, including the pleadings, evidence, jury instructions, and arguments of counsel. (*Snodgrass v. Hand* (1934) 220 Cal. 446, 448; *Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 718, 719-720 & fn. 9 (*Oxford*); *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 (*Zagami*).) When the inconsistency is between two findings in a special verdict, we neither imply findings in favor of the prevailing party nor presume in favor of upholding the verdict. (*Zagami*, at p. 1092.) Nor may we choose

between inconsistent findings in a special verdict, because neither party is entitled to have the favorable verdict credited and the unfavorable verdict disregarded. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682; *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1346 (*Shaw*).) If findings in a special verdict are inconsistent, the verdict is "against law," and the proper remedy is a new trial. (Code Civ. Proc., § 657, subd. 6; *Singh*, at p. 358.)

B. *Legal Analysis*

Applying the legal principles above, we first discuss the arguments that GM asserts in support of reversal. We then address the counterarguments of the Boekamps.

1. *GM's Contentions*

GM contends the jury's finding that it was negligent is inconsistent with the finding that the Corvette did not fail to perform as safely as an ordinary consumer would have expected. We agree. As we shall explain, the jury's findings cannot be reconciled because the record shows the negligence and strict products liability theories pursued at trial by the Boekamps both depend on the same design defect of the Corvette.

At the outset of the case, the Boekamps pointed to a defect in the design or manufacture of the Corvette as the cause of their injuries. In the negligence count of their complaint, the Boekamps alleged that GM "fail[ed] to properly design and/or manufacture the Corvette in such a manner so that it would not catch fire after normal and reasonable use." In their strict products liability count, the Boekamps similarly alleged that GM "designed and/or manufactured [the Corvette] in such a defective manner that, after normal and reasonable use, it ignited." This improper or defective

6

design or manufacture, the Boekamps further alleged, caused the Corvette to catch fire and burn their house down.

At trial, the Boekamps narrowed the scope of their negligence and strict products liability claims by introducing evidence of a design defect only; they put on no evidence of a manufacturing defect. The Boekamps' engineering expert, Vasudevan, was the only witness to testify on their behalf as to how the fire started. He testified that corrosion of the circuitry of a motor that controlled the movement of the steering column caused an electrical fire inside the Boekamps' Corvette. According to Vasudevan, the rate of corrosion was accelerated and could have been slowed by such "simple things" as including additional mechanical or chemical components in the circuitry of the motor or replacing an analog sensor with a digital one. Neither Vasudevan nor any other witness testified that anything had gone wrong in the manufacture of the specific Corvette purchased by the Boekamps, that the electrical components of the steering column motor of their Corvette differed from those called for by GM's design or from those installed in other 2005 Corvettes, or that the steering column motor of their Corvette performed differently from those of other 2005 Corvettes. Thus, the Boekamps' evidence indicated only a design defect in the 2005 Corvette's electrical system as the cause of the fire that destroyed their home.

The instructions the trial court gave the jury also focused on the Boekamps' design defect theory, although the instructions did briefly mention the concept of a manufacturing defect. As to strict products liability, the court instructed the jury generally that the Boekamps claimed they were harmed by a product designed,

7

manufactured, and distributed by GM that "contained a manufacturing defect" or "was defectively designed." (CACI No. 1200.) The court did *not* instruct specifically on manufacturing defects, however. (CACI Nos. 1201, 1202.) It did instruct the jury specifically on design defect, but only under the consumer expectation test, pursuant to which the jury could find the Corvette defective if it "*did not perform as safely as an ordinary consumer would have expected* it to perform when used or misused in an intended or reasonably foreseeable way." (CACI No. 1203, italics added; see *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 562 (*Soule*) ["a product *is* defective in design if it *does* fail to perform as safely as an ordinary consumer would expect"].)[2] As to negligence, the court gave the jury general instructions regarding the elements of a claim, standard of care, and causation. (CACI Nos. 400, 401, 430, 431.) It also gave more specific instructions that the Boekamps had to prove GM "was negligent in designing or manufacturing the 2005 Chevrolet Corvette"; and that in determining whether GM had been negligent, the jury should "*balance* what [GM] knew or should have known about *the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm*." (See CACI Nos. 1220, 1221, italics added; see *Putensen v. Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062, 1077-1078 (*Putensen*) ["In determining what precautions, if any, were required

---

[2] The Boekamps opposed giving instructions on design defect under the risk-benefit test (CACI No. 1204; see *Soule*, *supra*, 8 Cal.4th at p. 562 ["'a product may be found defective in design . . . if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design'"]), and the court did not instruct the jury on that test.

under the circumstances, the likelihood of harm, and the gravity of the harm if it happens, must be balanced against the burden of the precaution which would be effective to avoid the harm."].)  Hence, although the jury instructions mentioned manufacturing, they specifically and repeatedly directed the jury's attention to the safety aspects of the design of the Corvette.

The arguments made by the Boekamps' counsel throughout the course of the trial further indicated that their negligence and strict products liability counts were both based on a defect in the Corvette's design.  In the Boekamps' trial brief, counsel asserted the "*claims against* [*GM*] *founded in negligence flow from the underlying strict products liability claim* that has been brought alongside this claim," and later described that underlying claim this way:  "*By designing the electrical system of the Corvette in such a manner as to allow the* [*steering column motor*] *to fail*, [*GM*] will be seen to have *defectively designed the Corvette* and will be liable to [the Boekamps] for the resulting harm caused by the failure."  (Italics added.)  In a memorandum filed in opposition to GM's motion in limine regarding res ipsa loquitur, the Boekamps' trial counsel asserted: "The *only* theory that any party will be proffering is the theory that the fire originated in the steering column of the [Corvette] *due to a defect* in the [Corvette]."  (Italics added.) In closing argument to the jury, the Boekamps' trial counsel also pointed out the overlap between the negligence and strict products liability theories.  He contended the Corvette "was *so poorly designed* it suffered fretting corrosion throughout that steering column *through the design*."  (Italics added.)  Counsel also specifically asserted GM's negligence consisted of its "*failure to design a system that does not catch fire by itself*."  (Italics

9

added.)  Similarly, as to strict products liability, counsel argued the Boekamps' "Corvette *did not perform as safely as an ordinary consumer would have expected.  We don't expect what is inside the dash to catch on fire.*"  (Italics added.)  Therefore, as the Boekamps' trial counsel repeatedly urged, both of their theories of liability depended on the existence of a defect in the design of the Corvette.

In sum, based on the pleadings, evidence, jury instructions, and arguments of the Boekamps' trial counsel, we conclude the negligence and strict products liability theories on which the Boekamps proceeded to trial both posited the same defect in the design of the electrical system of the Corvette as the cause of the fire that destroyed their home.  Where, as here, "liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge."  (*Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1185 (*Lambert*).)  Thus, "[t]he jury could not have concluded that [GM] negligently designed the [Corvette] and at the same time conclude that it was not defective."  (*Id.* at p. 1186.)  The jury here, however, did just that:  It found GM was negligent even though it also found the Corvette was not defective under the consumer expectation test, the only strict products liability test on which the Boekamps requested the jury be instructed.  (See *Soule*, *supra*, 8 Cal.4th at p. 562 ["a product *is* defective in design if it *does* fail to perform as safely as an ordinary consumer would expect"].)  A judgment based on such inconsistent findings in a special verdict is "against law" and must be reversed.  (Code Civ. Proc., § 657, subd. 6; *Shaw*, *supra*, 83 Cal.App.4th at pp. 1344, 1349; *Lambert*, at p. 1186.)

10

2.     *The Boekamps' Contentions*

The Boekamps offer several procedural and substantive arguments in opposition to our conclusion the judgment must be reversed on the ground of inconsistent verdicts.  As we shall explain, none is persuasive.

The Boekamps try to erect a procedural barrier to GM's attack on the jury's special verdict by arguing GM waived any "ambiguity" in the special verdict because it failed to request correction or clarification of the verdict before the jury was discharged.  (See, e.g., *Zagami*, *supra*, 160 Cal.App.4th at p. 1092, fn. 5 [if "verdict is merely ambiguous, a party's failure to request a correction or clarification of the verdict before the jury is discharged may amount to a waiver of the ambiguity or defect"].)  GM correctly responds that this argument "attacks a 'straw man,' *i.e.,* an erroneous premise."  GM is *not* challenging the special verdict on the ground the jury's findings are *ambiguous*.  The findings are not ambiguous, because the jury clearly found in favor of the Boekamps on negligence, and just as clearly found against them on strict products liability.  Rather, GM is attacking the special verdict on the ground it contains *inconsistent* findings.  "[A] defect of that type is not waived by failure to call it to the attention of the trial court prior to discharging the jury." (*Morris v. McCauley's Quality Transmission Service* (1976) 60 Cal.App.3d 964, 972; accord, *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530 ["Nor is an objection required when the verdict is fatally inconsistent."]; *Zagami*, *supra*, 160 Cal.App.4th at p. 1093, fn. 6 ["inconsistent jury findings in a special verdict are not subject to waiver by a party"]; *Lambert*, *supra*, 67 Cal.App.4th at p. 1182 ["no objection was required to preserve the issue for review"].)

11

On the merits, the Boekamps contend that "[a] simple read of Questions Nos. 4 and 9 proves that there is no inconsistency among them[.]" Question No. 4 asked the jury, "Was [GM] negligent?" Question No. 9 asked, "Did the 2005 Chevrolet Corvette fail to perform as safely as an ordinary consumer would have expected when used or misused in an intended or reasonably foreseeable way?" According to the Boekamps: "Ordinary usage and performance of a motor vehicle is commonly understood to relate to its operational attributes such as size, speed, acceleration, handling, and the like, *i.e.*[,] what the car does when it is driven. . . . The jury could naturally conclude that operationally the Corvette did 'perform' safely when 'used,' without agreeing that the same car was not defective when it ignited while parked 'quietly in the garage[.]'" We disagree.

The Boekamps' interpretation of the jury's findings ignores the evidence and argument actually presented at trial. The Boekamps introduced no evidence of a design defect concerning the "size, speed, acceleration, [or] handling" of their Corvette. Nor did they urge the jury to hold GM strictly liable for a defect that made the Corvette unsafe *while being driven*, but hold GM liable in negligence for a different defect that made the Corvette unsafe *while parked*. Rather, the *only* alleged defect on which the Boekamps presented evidence was the electrical defect in the steering column motor that caused the motor to overheat and ignite the Corvette, and this defect underlay both the strict products liability and negligence theories argued to the jury. As to negligence, the Boekamps' trial counsel told the jury that "a car isn't going to catch on fire. The dash area doesn't burn by itself, unless someone was negligent." As to strict products liability,

12

counsel similarly told the jury: "[T]he 2005 Corvette did not perform as safely as an ordinary consumer would have expected. We don't expect what is inside the dash to catch on fire." On this record, "[t]he jury could not have concluded that [GM] negligently designed the [Corvette] and at the same time conclude that it was not defective." (*Lambert*, *supra*, 67 Cal.App.4th at p. 1186.) Thus, reviewing the special verdict de novo in light of the theories of liability actually presented to the jury (see, e.g., *Oxford*, *supra*, 177 Cal.App.4th at pp. 707, 718, 719-720 & fn. 9), we reject the Boekamps' strained reading of the special verdict.

The Boekamps also argue the special verdicts are not inconsistent because the jury might have based its negligence finding on something other than GM's defective design of the Corvette's electrical system. They correctly point out that "negligence and strict products liability are not identical doctrines," and "whether the verdicts can be reconciled depends on the precise instructions that were given and the particular evidence that was before the jury." (*Oxford*, *supra*, 177 Cal.App.4th at p. 718.) The Boekamps go on to contend that based on the evidence introduced at trial and the instructions given by the court, the jury could have found GM negligently manufactured their Corvette or negligently failed to retrofit all 2005 Corvettes to remedy the problem of accelerated fretting corrosion. In so contending, the Boekamps rely on cases holding that a "jury's finding of 'no' on *design* defect . . . is not inconsistent with a determination that the product was negligently *manufactured*" (*Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1267, second italics added), and a manufacturer's failure "to conduct an adequate retrofit campaign may constitute negligence apart from the issue of

13

defective design" (*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1827 (*Hernandez*)).  These holdings, however, have no application to this case.

The alternative negligence theories postulated by the Boekamps for the first time on appeal have no support in the record developed at trial.  The Boekamps introduced no evidence that their Corvette had "come[] off the assembly line in a substandard condition" (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 429), had been "manufactured negligently or in nonconformity with the specifications or with other apparently identical [Corvettes]" (*Dierks v. Mitsubishi Motors Corp.* (1989) 208 Cal.App.3d 352, 356), contained a steering column motor that "performed differently from other identical units" (*Gonzalez v. Autoliv ASP, Inc.* (2007) 154 Cal.App.4th 780, 792), or was otherwise defective so as to indicate GM had been negligent in manufacturing their particular Corvette.  Nor did the Boekamps introduce any evidence that GM knew or should have known of the accelerated fretting corrosion problem identified by Vasudevan, but failed to undertake a campaign to fix the problem. (Cf. *Hernandez*, *supra*, 28 Cal.App.4th at p. 1828 [jury finding crane was not defective in design when sold was not inconsistent with finding manufacturer "was negligent when upon determining [safety device] should be installed on all its new cranes it did not adequately seek to retrofit with [a safety device] the crane ultimately injuring [plaintiff]"].)  Further, although the instructions given to the jury referred to negligence in manufacturing (CACI Nos. 1220, 1221), the jury was *not* specifically instructed on either manufacturing defect (CACI Nos. 1201, 1202) or failure to retrofit (CACI No. 1223), and

14

the Boekamps' trial counsel did not argue either of these theories to the jury. Rather, as we explained earlier, the arguments of trial counsel, "the precise instructions that were given and the particular evidence that was before the jury" (*Oxford*, *supra*, 177 Cal.App.4th at p. 718) show that the Boekamps' negligence theory was based on the same design defect in the Corvette's electrical system that underlay their strict products liability theory. We thus reject the Boekamps' contention the jury could have found negligence based on some theory other than the design defect theory they actually pursued at trial.[3]

Finally, the Boekamps contend they did not need to prove a specific defect for the jury to find GM liable for negligence under the doctrine of res ipsa loquitur. That doctrine affects the burden of producing evidence in cases involving "certain kinds of accidents that are so likely to have been caused by a defendant's negligence that, in the Latin equivalent, '"the thing speaks for itself."'" (*Baumgardner v. Yusuf* (2006) 144 Cal.App.4th 1381, 1389.) The res ipsa loquitur doctrine was applied in the products liability context by the California Supreme Court in *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379 (*Jiminez*), on which the Boekamps principally rely. In *Jiminez*, the court held that in a products liability case, the doctrine "do[es] not require proof of any particular defect but only a showing that the occurrence of the injury is of such a nature that it can be said in light of past experience that it was probably the result of negligence

---

3       Our conclusion the Boekamps' negligence and strict products liability theories were based upon the same design defect also defeats their related argument that *Lambert*, *supra*, 67 Cal.App.4th 1179, "is easily distinguishable." That argument proceeds from the premise that "[t]he pleadings, evidence, instructions, verdict form, and argument at trial show that [their] theory of negligence included negligent manufacturing and failure to remedy." As we have explained, that premise is false.

15

of someone and that the defendant is probably the one responsible." (*Id.* at p. 385.) When such a showing is made, the jury may infer there was a defect in the product simply from the happening of the accident, and the plaintiff may prevail "without identifying the particular defect." (*Ibid.*) The Boekamps thus assert "the res ipsa doctrine allowed the jury to find GM negligent without proof of a particular defect." We reject this attempt to salvage the inconsistent special verdict.

The doctrine of res ipsa loquitur is inapplicable because the evidence did not establish all the conditions necessary to its application. There are three such conditions: (1) the accident must be of the type that does not occur unless someone is negligent; (2) the accident must be caused by an agency or instrumentality under the defendant's exclusive control; and (3) the accident must not have been due to any voluntary action or contribution by the plaintiff. (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 359.) To establish the second condition, the plaintiff must "show that the instrumentality was not mishandled or that its condition had not been changed after it left the defendant's possession." (*Putensen*, *supra*, 12 Cal.App.3d at p. 1075.) Here, evidence at trial showed that the condition of the Corvette had changed substantially: it had been out of GM's possession for more than four years at the time of the fire that destroyed the Boekamps' home, driven by several members of the Boekamp family for a total of more than 44,000 miles, serviced regularly for routine maintenance, taken to the dealer multiple times for inspection and repair of dashboard electrical components, and repaired after a minor collision. "Accordingly, under the circumstances it cannot be said that it is more probable than not that the [fire] was the result of [GM's] negligence . . . . The

16

absence of the second requisite condition precludes, therefore, the application of the doctrine of res ipsa loquitur."  (*Id.* at p. 1076.)

Even if we assume for the purposes of argument that the res ipsa loquitur doctrine applied, the jury's finding of negligence would still be inconsistent with its finding of no design defect.  Had the jury used the res ipsa loquitur doctrine to infer from the occurrence of the fire at the Boekamps' residence that GM was negligent, that inference would "have necessarily meant that there was a defect in the [Boekamps' Corvette]." (*Jiminez*, *supra*, 4 Cal.3d at p. 385.)  Further, the jury would have had to infer the defect was some kind of design flaw that caused the Corvette to self-ignite while parked in the Boekamps' garage, because the only negligence theory the Boekamps' trial counsel argued to the jury was GM's "failure to design a system that does not catch fire by itself." The existence of such a defect, however, cannot be reconciled with the jury's finding that the Corvette did not fail to perform as safely as an ordinary consumer would have expected and, therefore, was not defective under the only strict products liability theory the Boekamps presented at trial.  (See *Soule*, *supra*, 8 Cal.4th at p. 562 ["a product *is* defective in design if it *does* fail to perform as safely as an ordinary consumer would expect"]; *Lambert*, *supra*, 67 Cal.App.4th at p. 1186 ["The jury could not have concluded that [GM] negligently designed the [Corvette] and at the same time conclude that it was not defective."].)  Thus, even if the res ipsa loquitur doctrine applied, it would not eliminate the inconsistency in the special verdict.

17

3.      *Conclusion*

For the reasons discussed above, we conclude the jury's finding that GM was negligent is inconsistent with its finding that the Boekamps' Corvette did not fail to perform as safely as an ordinary consumer would have expected.  Such inconsistent findings are "against law," and require reversal of the judgment and remand for a new trial.  (Code Civ. Proc., § 657, subd. 6; *Oxford*, *supra*, 177 Cal.App.4th at p. 722; *Lambert*, *supra*, 67 Cal.App.4th at p. 1186.)  "As we have concluded that this case must be remanded for new trial, we need not address [GM's] claim of instructional error [regarding res ipsa loquitur]."  (*Oxford*, at p. 722.)  Nevertheless, for the guidance of the trial court on remand, we point out that if the evidence of the changed condition of the Boekamps' Corvette that was introduced at trial is again introduced on retrial, the res ipsa loquitur doctrine would be inapplicable.  (See pp. 16-17, *ante*.)

## DISPOSITION

The judgment is reversed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

18