Filed 6/24/24  Moir v. Ventura Locksmiths CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| MATTHEW S. MOIR,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>VENTURA LOCKSMITHS, INC., et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B324653<br>(Super. Ct. No. 56-2018-00517065-CU-PA-VTA)<br>(Ventura County) |

In this personal injury action, Matthew S. Moir appeals from the judgment entered after a jury trial.  The jury awarded him damages for injuries he had sustained in a motor vehicle collision.  Appellant contends the jury's special verdicts on damages are inconsistent because although the jury awarded him damages for future medical expenses and future lost earning capacity, it did not award him any damages for future noneconomic damages.  Appellant contends: "(1) [Future] noneconomic damages are the inevitable product of sizeable

awards of future medical expenses and [future] lost earnings capacity, so the award of **zero** future [non]economic damages constitutes a fatally inconsistent verdict indicative of a compromise verdict; and (2) defense [counsel's] misconduct [during closing argument] led to . . . the irreconcilable inconsistency in the amounts awarded and to the misapportionment of fault between [appellant] and respondents." The jury found appellant to be 70 percent at fault and respondents to be 30 percent at fault.[1]  We affirm.

<em>Factual Background</em>

"As [respondents] were the prevailing parties at trial [on the issue of future noneconomic damages], we view the evidence [on this issue], which was conflicting and vigorously contested, in a light most favorable to [respondents], resolving all conflicts in their favor."  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 787 (*Cassim*).)

At about noon on July 8, 2017, appellant was driving his Honda Civic southbound on Creek Road, "a two-lane highway." He stopped at a point where the highway was divided by parallel double-yellow lines.  He intended to turn left and park his vehicle on the shoulder along the other side of the road.[2]  Before appellant began the turn, he was "rear-ended" by a van driven by

---

[1] Appellant states that "[h]e does not contend that the special verdict allocating 70 percent of fault to him lacks evidentiary support."

[2] Vehicle Code section 21460, subdivision (a) provides, "If double parallel solid yellow lines are in place, a person driving a vehicle shall not drive to the left of the lines, except as permitted in this section."  The jury was not instructed as to section 21640.

respondent German Cahuantzi.  At the time of the collision, Cahuantzi was working for respondent Ventura Locksmiths, Inc.

Cahuantzi testified that he was "going around [a] curve" and did not see appellant's Honda until "it was about three car lengths in front of [him]."  Appellant's expert opined that, when the van rear-ended the Honda, it was travelling at "20 to 25, closer to 25" miles per hour.

During closing argument, appellant's counsel conceded that his client was "technically in violation of" Vehicle Code section 22340, subdivision (a).  The jury was instructed that this subdivision provides, "'No person shall bring a vehicle to a complete stop upon a highway so as to impede or block the normal and reasonable movement of traffic unless the stop is necessary for safe operation or in compliance with law.'"

Dr. Lorne Label, a neurologist, was called as a witness for the defense.  He testified that when the collision occurred, appellant's "head hit the . . . pillar of the door or window of the door on the left.  There was no loss of consciousness.  [Appellant] experienced some neck pain, some tingling in his left hand.  He went to the emergency room at Ojai Valley.  His exam was normal other than some tenderness in his neck area.  They obtained a CAT scan of his neck that showed his degenerative changes, arthritic changes in his neck.  And he was given ibuprofen and discharged home."  Appellant "did not suffer a significant head injury but more of a bump on the head and maybe a whiplash to his neck area."

Dr. Label continued: "Subsequently, [appellant] did develop some post-concussion[] symptoms . . . .  [¶]  But, . . . he did not have any weakness.  His cognitive functions were fine. . . .  So there was no real indication that he suffered a traumatic brain

3

injury from that accident." "[E]very single examination that he's ever had from 2017 on has been a normal exam neurologically, barring tenderness in his neck . . . ." Appellant's medical records "confirm[] that [he] did suffer a concussion, did resolve the symptoms from the concussion, does not have any evidence for permanent brain damage or neurologic damage, does not have any cognitive impairment, and has exaggerated many of his complaints." "[H]e doesn't have any disability. He doesn't have any evidence of head trauma. He's walking. He's talking. He's driving. He's functioning."

*Jury Verdict*

During closing argument, appellant's counsel asked the jury to award his client $1.6 million for future loss of earning capacity, $491,492 for future medical expenses, and "about $6 million" in noneconomic damages for past and future pain and suffering. The jury made the following awards: $50,000 for past loss of earning capacity, $170,000 for future loss of earning capacity, $80,000 for future medical expenses, $30,000 for past noneconomic damages, and nothing for future noneconomic damages. The trial court noted, "[Appellant] did not seek any amount for past medical expenses."

The jury's award of damages totaled $330,000. Because appellant was 70 percent at fault, the court's judgment awarded him damages of $99,000 (30 percent of $330,000).

*The Verdict Is Not Internally Inconsistent,*
*Nor Does It Reflect a Compromise Verdict*

Appellant contends: "[T]he facts of **this** case compel a finding that the jury's failure to award future noneconomic damages was inconsistent with its findings that [appellant] would continue to need medical treatment and suffer loss of

4

income capacity." "When a verdict is inconsistent, as this one is, it more than likely shows an impermissible compromise by the jurors along the lines of 'I will vote to award future economic damages if you will agree not to award future noneconomic damages.'" "Because the verdict is internally inconsistent and reflects a jury compromise, the judgment must be reversed for complete retrial." (Bold and capitalization omitted.)

The jury was instructed that appellant claimed future "noneconomic damages for . . . future physical pain, mental suffering, and emotional distress." The jury was also instructed that future noneconomic damages include compensation for "loss of enjoyment of life, physical impairment, depression, anxiety, humiliation, . . . deterioration of bodily state, and susceptibility to future harm or injury."

Respondents argue that appellant "waived any alleged inconsistency in the verdict by not . . . challenging the verdict before the jury was discharged." (Bold omitted.) We disagree. The court held to the contrary in *Lambert v. General Motors* (1998) 67 Cal.App.4th 1179, 1182: "Plaintiff argues that General Motors waived the issue regarding inconsistent [special] verdicts by not objecting before the jury was discharged. This is not the law in California. Pursuant to Code of Civil Procedure section 619, no objection was required to preserve the issue for review." (Accord, *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 123, fn. 4 (*Trejo*); see also *Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 300 ["if the special verdicts are . . . inconsistent, failure to seek clarification from the jury does not create a forfeiture, and the proper remedy is ordinarily a retrial on the issues underlying the defective verdict"].)

Respondents maintain that appellant "effectively abandoned" the claim of inadequate future noneconomic damages because at the hearing on his motion for a new trial "his counsel disavowed an additur as an adequate remedy." Appellant's counsel told the court, "[O]n this issue right here about the irreconcilably inconsistent verdict, additur is not an option." Appellant was not required to accept the proposed additur. "'Inconsistent verdicts are '"against the law,"' and the proper remedy is a new trial.'" (*Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 721-722 (*Oxford*).)

"'"The inconsistent verdict rule is based upon the fundamental proposition that a factfinder may not make inconsistent determinations of fact based on the same evidence. . . .' An inconsistent verdict may arise from an inconsistency between or among answers within a special verdict [citation] or irreconcilable findings. [Citation.] Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law. [Citation.] The appellate court is not permitted to choose between inconsistent answers." (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 682.) "The standard of review for inconsistency in a special verdict is de novo." (*Trejo, supra,* 13 Cal.App.5th at p. 124, fn. omitted.)

"'A special verdict is inconsistent if there is no possibility of reconciling its findings with each other. . . .'" (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 585.) "Where special verdicts appear inconsistent, if any conclusions could be drawn which would explain the apparent conflict, the jury will be deemed to have drawn them." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424.) "[S]pecial

verdicts are deemed inconsistent when they are '*beyond possibility of reconciliation under any possible application of the evidence and instructions.*'" (*Oxford, supra,* 177 Cal.App.4th at p. 716, italics added.)

The special verdicts on damages are readily reconcilable. In denying appellant's motion for a new trial based on inconsistent verdicts, the trial court reasoned:

> "[T]he jury only awarded [appellant] $30,000 for pain [and] suffering for the five years between the accident and the trial, during the time when [appellant's] pain and suffering was arguably the worst. This decision by the jury shows that the jury did not believe that there was significant pain and suffering caused by [respondents] and there was sufficient evidence at trial to support this determination. There was testimony that [appellant's] complaints were exaggerated . . . ."

> "[A]s to the award of $0 in future noneconomic damages given [appellant's] future economic damages of $170,000 for lost earnings, the Court finds that the inability to earn money in the future does not necessarily correlate to future pain and suffering, nor has [appellant] shown that it does. . . . [¶] . . . The jury could reasonably have found that [appellant] would suffer $170,000 in future lost earnings but not experience any accompanying pain and suffering."

> "As to whether the award of $0 future noneconomic damages is inconsistent with the award of $80,000 in future medical expenses, there was evidence that [appellant] would benefit from continuing speech therapy and future eye exams and specialized glasses. To the extent the jury's decision to award future medical damages was to cover costs of speech therapy and eye exams for the

rest of [appellant's] life, any need for this type of treatment does not suggest that [appellant] will have accompanying pain or suffering, or that [his] pain or suffering would be a condition precedent to such treatment. The jury could reasonably find that such treatments are minimal, noninvasive and allow [him] to maintain a status quo or are preventative in nature without attendant pain and suffering."[3]

During the trial, appellant's counsel played for the jury the video testimony of Dr. Carl Garbus, an optometrist. He opined that appellant had "vision problems" as a result of "the traumatic brain injury" caused by the collision. Dr. Garbus's "prognosis" was "that . . . he'll either stay where he's at now in terms of how he functions, or it may actually get worse over time." He recommended that, "throughout the rest of his life," appellant "have annual eye exams that would include ocular health testing, ocular motor testing and prism testing." "The annual cost would be $900." Dr. Grabus also "recommended prescription glasses with prisms being updated annually" "[f]or the rest of his life." The "glasses . . . would include a distance prescription, a reading prescription and a sunglass prescription." The annual cost for the three pairs of glasses would be approximately $2,400.

Appellant was 48 years old. The jury was instructed, "According to the National Vital Statistics reports life expectancy table for males, a 48-year-old male is expected to live another

---

[3] This case illustrates the danger in exaggerating a claim for pain and suffering. The claim may backfire, as it apparently did here. The trial court said there was testimony that appellant's complaints were exaggerated. The jury impliedly found that his claimed damages were excessive. They seem excessive on appeal as well.

31.6 years." In their brief respondents note: "The award of $80,000 for future medical expenses roughly approximates the lifetime cost (reduced to present value) of eye examinations and eyeglasses. These are not invasive procedures requiring an award of future noneconomic damages. To the contrary, millions of Americans have annual eye examinations and get new eyeglasses without any associated pain and suffering."[4]

*Appellant Has Not Demonstrated that He Was Prejudiced by the Alleged Misconduct of Respondents' Counsel*

During voir dire, prospective juror no. 11 expressed concern that appellant was not physically present in court: "Where is he right now? Why isn't he here?" Appellant's counsel replied: "I can tell you there are reasons people might not be here, for example, listening to everything that's being said about them and their condition. There might be something about their condition that makes it very difficult to sit."

In the presence of the other prospective jurors, the trial court instructed juror no. 11 "not to consider . . . or speculate about the reasons" "why the plaintiff isn't here." "[I]t's not part of the evidence in this case." But juror no. 11 said he could not be

---

[4] See *Audish v. Macias* (Cal. Ct. App., May 21, 2024, No. D081689) 2024 WL 2860272, at *5; 2024 Cal. App. LEXIS 369, *21 [court "reject[ed] Audish's claim that the jury erred by declining to award him damages for future non-economic losses," even though the jury awarded him damages for future medical expenses, because "[t]he evidence of Audish's improving physical and cognitive conditions, and the absence of evidence that he will need to endure especially physically painful or intensive medical treatments in the future, supports the jury's decision"].

fair and impartial unless he received an answer to his question why the plaintiff was not present. The juror was excused for cause.

During opening statement, appellant's counsel answered the question of why his client was absent: "[W]hy is he not here? He's not here primarily because of physical issues, sensitivity to light, a whole bunch of issues, but one of the reasons he's not here is he's not going to sit here and listen to this whole thing. [¶] He lives with it. He doesn't want to see the crash, doesn't want to hear the doctors, you know, dissect him verbally, you know, what he's going through. He doesn't want to hear witnesses come in talking about how different he is now from what he used to be like. He doesn't want to hear people deny that it's their fault. He doesn't want to hear that. [¶] But there's other reasons, too, physical reasons."

During closing argument, respondents' counsel commented on appellant's absence: "It's . . . fair comment to discuss [appellant's] attitude towards the trial. We've been here for nine days. [Appellant] has been here for two hours. You, as the jury, have been present --" Appellant's counsel interjected: "Your Honor, I'm going to object to that. You've instructed the jury on this already before [during voir dire]." The court overruled the objection.

Respondents' counsel continued: "[Respondents] have also been here every session of every trial day. [Appellant] testified, walked off the stand, passed the jury box, walked out of the courtroom, never to be seen again. [¶] This is a factor to consider pursuant to the jury instructions that discuss and instruct on what is the witness's attitude toward the case or about giving testimony. This is [appellant's] case, his lawsuit, and he has

10

brought the claims. He should be present, and it is a reflection on his attitude that he is not. [¶] It has been said that he should not have to hear about his condition; however, he has seen numerous doctors and he knows his condition. That is not a reasonable excuse. [¶] [Appellant] should be here, and his attitude is a factor to consider in the totality of the circumstances, especially when, through his attorneys, [he has] asked you for millions of dollars in damages. [¶] A reasonable inference is that he does not want you to see and observe him during trial because he looks and acts normal. This is consistent with the medical doctors concluding that he presents in a normal manner with normal physical examinations and clinical findings."

Appellant argues, "[Respondents'] counsel committed prejudicial misconduct by telling the jury it could draw an adverse inference against [appellant] from circumstances [i.e., appellant's absence] the court had explicitly instructed the jury that it could not consider." But after the trial court had so instructed the jury during voir dire, in his opening statement appellant's counsel explained to the jury why his client was not present.

Appellant made a similar misconduct argument in his motion for a new trial. The court said it had "overruled [appellant's] objection to the defense closing [argument] . . . because [it] recalled [appellant's] counsel specifically telling the jury [during opening statement] that the reason [appellant] was not in attendance at trial was because [he] did not want to hear what others said about him and because [he] felt the experience would be too painful. Based on the Court's recollection, [appellant's] counsel had *opened the door* to argument on the

11

conclusions the jurors should draw from [his] absence. If there was any error in allowing the argument, it was invited by [appellant's] counsel." (Italics added.)

There is an "opening the door" theory that generally applies to the admission of evidence that would otherwise be inadmissible. "In many federal courts "'a party who raises *a subject* in an opening statement 'opens the door' to [the] admission of evidence on that *same subject* by the opposing party.'"'" (*Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1027.) We have not found any appellate opinion that discusses whether a party who raises an improper subject in opening statement "opens the door" to comment by opposing counsel on the same subject during closing argument.

Appellant "contends in substance that the [trial] court erred by effectively determining that [respondents' counsel] did not commit misconduct by" commenting on appellant's absence. (*People v. Alvarez* (1996) 14 Cal.4th 155, 212.) "As a general matter, an appellate court reviews a trial court's ruling on prosecutorial misconduct for abuse of discretion." (*Id.* at p. 213.) We see no reason why the standard of review should be different when an appellate court reviews a trial court's ruling on counsel's alleged misconduct in a civil action. "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Respondents argue that the trial court did not abuse its discretion because their counsel's comments on appellant's absence "simply asked the jury to draw a reasonable inference that if [appellant] was really badly hurt, he would have appeared

12

at his own trial and that his failure to do so indicated that he was not seriously injured." But this is a speculative inference, not a reasonable one. There may have been legitimate reasons for appellant's absence. "'[C]ounsel in summing up . . . may not assume facts not in evidence or invite the jury to speculate as to unsupported inferences.'" (*Cassim*, *supra*, 33 Cal.4th at p. 796.)

We need not decide whether respondents' counsel committed misconduct. Counsel's closing "argument referring to [appellant's absence], even if misconduct, did not result in a miscarriage of justice under article VI, section 13 of the California Constitution because it is not reasonably probable [appellant] would have obtained a more favorable verdict in the absence of the argument. Any error was thus harmless." (*Cassim*, *supra*, 33 Cal.4th at p. 805.) "[T]hat a single instance of attorney misconduct during closing argument could, standing alone, theoretically justify reversal does not mean [respondents' counsel's] arguments rose to this level. . . . [H]is reference to [appellant's absence] was brief." (*Id*. at p. 803.)

During his rebuttal argument, appellant's counsel vigorously contested respondents' theory that it is reasonable to infer appellant "does not want [the jury] to see and observe him during trial because he looks and acts normal." Appellant's counsel told the jury: "You have a jury instruction that says your decision [is] supposed to be based on the evidence, not on whether [appellant] is here or not. But [respondents' counsel] brought it up, so I'll talk about [appellant] not being here. [¶] The man is in pain; the man is in physical pain. Activity exacerbates the pain. Getting here to the courthouse is an activity that exacerbates the pain. Sitting in one place exacerbates the pain. He can't handle these lights very long. Migraines kick in. He

13

gets dizzy. It's not safe for him to drive. Somebody else has to drive. He's depressed. . . . [¶] He's got to sit here; he's got to listen to himself being dissected. He's going to listen to people blame him for what they did. He's got to listen to somebody like Dr. Label who said what he went through he didn't go through. . . . And [respondents' counsel] wants you to make a decision based on him not being here instead of the real evidence, instead of what we know."

During voir dire, the trial court instructed prospective juror no. 11 "not to consider . . . or speculate about the reasons" "why the plaintiff isn't here." "[I]t's not part of the evidence in this case." We assume the other jurors heard this instruction.

Accordingly, even if respondents' counsel's remarks during closing argument rose "to the level of misconduct, when [the remarks are] viewed in the context of the entire case, we have no trouble concluding that [appellant] would not have achieved a more favorable result had the remark[s] not been made." (*Sacramento Area Flood Control Agency v. Dhaliwal* (2015) 236 Cal.App.4th 1315, 1340.)

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

14

Ronda McKaig, Judge

Superior Court County of Ventura

_____

Lowthorp, Richards, McMillan, Miller & Templeman and John Howard; Arnold LaRochelle Mathews VanConas & Zirbel and Dennis LaRochelle; Ferguson Case Orr Paterson and Wendy C. Lascher, for Plaintiff and Appellant.

Horvitz & Levy and Barry R. Levy, Steven S. Fleischman; Knapp, Petersen & Clarke and Stephen C. Pasarow, Peter J. Senuty, Maria A. Grover, for Defendants and Respondents.